UNITED STATES of America,
Plaintiff-Appellant,

v.

Umberto Jose CHAVEZ et al.,
Defendants-Appellees.

No. 75–1719.

United States Court of Appeals,
Ninth Circuit.

March 31, 1976.
Certiorari Denied June 1, 1976.
See 96 S.Ct. 2237.

Arthur David Porcella (argued), U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Marcus S. Topel, Asst. Federal Public Defender (argued), San Francisco, Cal., for defendants-appellees.

## OPINION

Before DUNIWAY and KENNEDY, Circuit Judges, and PALMIERI,* District Judge.

DUNIWAY, Circuit Judge:

Chavez and thirteen others were indicted on May 6, 1971, on a charge that they had conspired to import and distribute heroin in violation of 21 U.S.C. §§ 173 and 174 as those sections then read. Much of the evidence upon which the charge is based was obtained by means of a wiretap of Chavez's telephone, and the government appeals from an order suppressing this evidence. We reverse.

This is the second such appeal in this case. On the first appeal, we affirmed an order of the district court which suppressed the same evidence on the ground that there had not been a proper authorization by the Attorney General of the application to the district judge for an order permitting the tap. *United States v. Chavez,* 9 Cir., 1973, 478 F.2d 512. The Supreme Court, however, reversed and remanded as to the wiretap here in question. *United States v. Chavez,* 1974, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380. On remand, the district court considered a second ground for suppressing the evidence, not reached in its first order, namely, failure to comply with the statutory command, which was also embodied in the court's order, to minimize interception of calls.

Section 2518(5) of Title 18 U.S.C. provides:

No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. Extensions of an order may be granted, . . . . The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.

The section also, in subsection (6), permits the authorizing judge to require reports to be made to him "showing what progress has been made toward achievement of the authorized objective and the need for continued interception. . . . at such intervals as the judge may require."

The purpose of the wiretap was to investigate what was believed to be a widespread conspiracy pursuant to which heroin was imported from Mexico, processed in the San Francisco area, and distributed throughout northern California. Preliminary information suggested that a large number of people were involved, including women, members of Chavez's family, and other, constantly changing, personnel.

Judge Carter issued the interception order on February 18, 1971, and limited duration of the interception to a maximum of twenty days. He also directed supervising attorney Merten to report back to him every five days at which time a decision as to whether to continue the interception would

---

* The Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

be made. On the fifth day of the tap Merten personally reported to Judge Carter who, after reading Merten's written report and talking with Merten, extended the authorization to tap for another five days. The government terminated the tap after nine and one-half days, having intercepted 290 calls.

The day before Judge Carter made the order, Merten met with the agents who were to conduct the tap in order to discuss its operation and each agent's responsibilities. Each agent was asked to read and sign the proposed interception order which contained the minimization language of the statute. Merten's uncontradicted testimony shows that he explained the statutory minimization directive as well as departmental guidelines on minimization. However, because of the problems involved in trying to determine at the outset which calls are innocent when investigating a large scale drug conspiracy, Merten instructed the agents to terminate interception only of attorney-client and priest-penitent calls. He also required that he be given a daily log of intercepted calls, and testified that if a clear pattern of innocent calls had appeared he would have modified his instructions to require termination of interception of such calls.

The defendants argued that because the instructions to the agents were to intercept in full all non-attorney-client and non-priest-penitent calls, the statutory requirement of minimization was intentionally disregarded rather than achieved. The district court agreed and suppressed the evidence. We conclude that, in this particular case, the standard that the judge applied is inappropriate.

■ This case differs from most of the cases cited to us in one important respect, the length of time, nine and one-half days, during which the wiretap was used. In most of the cases cited to us, the time was substantially longer.[1] We emphasize this difference because it has a substantial, indeed, a crucial bearing on the question of whether there has been a reasonable minimization of the use of the wiretap, for two reasons. The first reason is that one of the most obvious ways to minimize is to use the tap only for a short time. The portions of the Act that we have quoted above show that the Congress had this fact in mind. Indeed, there is some reason to think that restricting the time of listening in was thought by the Congress to be the, or at least a, principal method of minimizing. See, e. g., Senate Report No. 1097, 90th Cong., 2d Sess., Judiciary Committee, Apr. 29, 1968, to accompany S.917 reproduced in 1968 U.S.Code Cong. & Adm.News, p. 2112, at p. 2190, 2192–93.

■ The second reason is that "[w]here a course of conduct embracing multiple parties and extending over a period of time is involved, the order may properly authorize proportionately longer surveillance," Senate Report 1097, *supra*, quoted in *United States v. Cox, supra,* 462 F.2d at 1300, and in such a case it may not be possible to tell whether a particular conversation is innocent until all of it has been heard. Thus in the early stage of use of the tap, it may be necessary to listen to all or substantially all

1. *United States v. Cox,* 8 Cir., 1972, 462 F.2d 1293, 1301, *cert. denied,* 1974, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (20 days); *United States v. Tortorello,* 2 Cir., 1973, 480 F.2d 764, 770, *cert. denied,* 1973, 414 U.S. 866, 94 S.Ct. 63, 32 L.Ed.2d 86 (five months and 20 days); *United States v. Bynum,* 2 Cir., 1973, 485 F.2d 490, 499, *vacated,* 1974, 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209, *on remand,* 1975, 513 F.2d 533 (five weeks); *United States v. Manfredi,* 2 Cir., 1973, 488 F.2d 588, 592–93, *cert. denied,* 1974, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (59 days); *United States v. James,* 1974, 161 U.S.App.D.C. 88, 494 F.2d 1007, 1012, *cert. denied,* 1974, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (39 days); *United States v. Cirillo,* 2 Cir., 1974, 499 F.2d 872, 875–76, *cert. denied,* 1974, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (120 days and 90 days); *United States v. Capra,* 2 Cir., 1974, 501 F.2d 267, 273–74, *cert. denied,* 1974, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (exact time not clear—over one month); *United States v. Quintana,* 7 Cir., 1975, 508 F.2d 867, 870 (35 days); *United States v. Armocida,* 3 Cir., 1975, 515 F.2d 29, 35 n. 1, *cert. denied,* 1975, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (13 days and 18 days); *United States v. Turner,* 9 Cir., 1975, 528 F.2d 143, 150 (1975, Revised Dec. 31, 1975, (30 days)).

conversations in order to find out how extensive the conspiracy is, who the conspirators are, where and when they meet, how they do business, and the other important and often complex details that make up the conspiracy. Thus, at the outset, where it is believed that an extensive conspiracy is going on, it may be necessary, and it does not violate the statute, to listen to nearly all calls on the tapped line.[2] It is true that, over a period of time, a pattern of innocent conversations may develop, so that guidelines can be formulated and followed to terminate listening to such calls. When this is possible, it should be done.[3] Here, however, such a pattern did not develop. *See United States v. Quintana, supra,* 508 F.2d at 873–75.

█ The case at bar falls within the foregoing rationale. The purpose of the tap was to investigate a large scale drug conspiracy. The number of people involved was great and their identities were uncertain, so that the agents could not be sure that one of the parties to a conversation was not a conspirator. The conspiracy involved people with many common interests, so that a call which started innocently could shift to conspiracy-related topics. The conversants frequently spoke in foreign languages making identification of the parties and the subject of the call often impossible until the dialogue had been carefully translated. Jargon and code words are commonly used by those dealing in illicit drugs, *United States v. Quintana, supra,* 508 F.2d at 874, n. 6, and were employed here. Finally, the range of activity involved in this major drug operation was so great that even calls involving doctors, real estate agents, telephone employees, and other apparently legitimate business or personal calls could not be above suspicion. Because of all of these problems in monitoring this large scale drug conspiracy, it would have been most difficult, if not impossible, for the monitoring agents to determine that any particular call was not conspiracy-related until it has been completed and, in many cases, analyzed. As a matter of hindsight, the defendants, the district judge, and this court can point to some such calls. But that is not the proper test. *United States v. Quintana, supra,* 508 F.2d at 874. We conclude that, in this case, intercepting every call until its completion (except for attorney-client and priest-penitent calls) during the comparatively short period of the tap did not violate the minimization requirement.

The defendants claim, however, that this case is not like the others in that here there were instructions to the monitoring agents not to terminate any calls, other than attorney-client and priest-penitent, no matter how innocent they might appear to be. The district judge accepted this rationale. But if, as we hold, it is proper in such a case as this, at least in the early stage of the use of the tap, to listen to and record all calls, it cannot be improper for the supervising attorney to tell the agents that that is what they are to do.

█ Moreover, it is not correct to say that no efforts to minimize were undertaken. Merten expressed concern for the minimization problem at both the meeting of the agents and in his meeting with Judge Carter. He outlined for the agents both the statutory mandate and the departmental guidelines on minimization, and he testified that his failure to give detailed minimization instructions was based upon the same reasons which we have found sufficient. Being aware of the statutory requirement, Merten demanded and received daily logs of all intercepted calls, and he testified that had a clear pattern of innocent calls developed he would have altered his instructions to require immediate termi-

---

2. *United States v. Cox, supra,* 462 F.2d at 1300–01; *United States v. Bynum, supra,* 485 F.2d at 500–02; *United States v. Manfredi, supra,* 488 F.2d at 599–601; *United States v. James, supra,* 508 F.2d at 873–75; *United States v. Armocida, supra,* 505 F.2d at 44–45; *United States v. Turner, supra,* 528 F.2d at 157.

3. *United States v. Tortorello, supra,* 489 F.2d at 783–85; *United States v. Cirillo, supra,* 499 F.2d at 879–80; *United States v. Capra, supra,* 501 F.2d at 275–76; *United States v. Armocida, supra,* 515 F.2d at 42–43.

nation of the interception of such calls. The record shows that 180 calls which were monitored in full turned out to be nonconspiracy-related. Of these, defendants point to 78 which they say should have been terminated. We have reviewed the record, however, and fail to find any clear pattern of any substantial number of innocent calls which could be said to have required Merten to order termination of interception of those calls thereafter. Lacking any such pattern, we cannot say that failure to terminate interception of those calls violated the minimization requirement.

The order appealed from is reversed and the case is remanded for further proceedings.