434 A.2d 735

**COMMONWEALTH of Pennsylvania,**

v.

**Harry A. LAYMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 11, 1981.

Filed Aug. 21, 1981.

Thomas P. Ruane, Jr., Uniontown, for appellant.

Gerald R. Solomon, District Attorney, Uniontown, for Commonwealth, appellee.

Before BROSKY, DiSALLE and SHERTZ, JJ.

BROSKY, Judge:

Appellant was found guilty by a jury of robbery and theft by unlawful taking on June 9, 1978. A motion to dismiss was filed pursuant to Pennsylvania Rule of Criminal Procedure 1100 (hereinafter Rule 1100) and denied. Appellant was ordered to pay the costs of prosecution, make restitution and was sentenced to not less than four years and not more than eight years imprisonment. Post-verdict motions were

also filed and subsequently denied. This appeal followed. We affirm the decision of the trial court.

Layman claims the trial court erred on five separate grounds. First, he asserts Rule 1100 was violated. Second, he remonstrates that a search warrant used by police was insufficient because it was not based upon sufficient probable cause. Third, he states the arrest warrant lacked probable cause. Fourth, he contends "a mistrial should have been granted based on the Commonwealth's failure to provide an adequate bill of particulars listing all witnesses to be called for trial[.]" Appellant's brief, page 2. And, fifth, he asserts the trial court improperly denied appellant's request to seek certain questions of veniremen.

Appellant's convictions stem from the following facts. On June 5, 1977, a robbery occurred at Melvin's Service Station in Perryopolis, Pennsylvania. The appellant allegedly was confronted by an employee of Melvin's Service Station at a "pop machine" in front of the station. Layman, according to the testimony of the attendant, held a revolver in one of his hands. The attendant then went to pump gas for a customer. While he returned to the service station building, he noticed the appellant was no longer outside of it. The attendant went inside the building and was apparently confronted by the appellant who is reputed to have said, "This is a stick up." The attendant gave him what money he had in his pockets. The attendant stated he was then forced out and away from the service station. The attendant did not claim he saw appellant return to or enter the service station. He did state that he called the police and the station owner to report the events. Appellant was apprehended at a subsequent time. The attendant identified the appellant during the trial.

■ First, appellant claims Rule 1100 was violated. Layman was arraigned on June 23, 1977. Thus, his trial would need to be scheduled on or before December 20, 1977. However, on September 5, 1977, appellant's counsel requested a continuance until December 5, 1977, for the trial court's December session. The continuance was granted and the

case was ordered for trial on December 14, 1977. Thus, the continuance was ordered for at least 91 days. Under Rule 1100(d)(2), 61 days of this continuance are excluded from calculations. Rule 1100(d)(2) states:

(d) In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) . . .

(2) *any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney,* provided that only the period beyond the thirtieth (30th) day shall be so excluded.

(Emphasis added.)

Appellant also presented several motions to suppress evidence which were denied on December 14, 1977. In response, presumably, to the court's decision, Layman pleaded guilty. This plea was withdrawn on April 24, 1978. Thus, an additional 131 days *delay* was caused by the unavailability of appellant for trial. These days are excluded pursuant to Rule 1100(d)(1) which states:

(d) In determining the period for commencement of trial there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney;

. . .

Therefore, 192 days may be excluded from the Rule 1100, 180 day period. Thus, while the appellant's trial did not occur until June 8, 1978, 350 days after the Rule 1100 commencement date, 192 of those days are excludable, Rule 1100(d). Therefore, the trial commenced 158 unexcluded days after June 23, 1977. There was no Rule 1100 violation.

Next, the appellant challenges both the legitimacy of his arrest and a subsequent search. These events occurred in the following factual sequence, as described by the Commonwealth:

Mr. Unice was a state police officer at the time Mr. Layman was arrested. He was in the company of Officer

Oudinot on the morning of the arrest; he physically took Mr. Layman off of the couch of the living room of the mobile home. Officer Oudinot later got the search warrant, went back and found the gun. Officer Oudinot was not inside the mobile home when Mr. Layman was laying on the couch.

■ First, appellant claims the arrest warrant under which he was arrested was invalid because it contained insufficient probable cause. In *Commonwealth v. Tolbert*, 235 Pa.Super. 227, 230, 341 A.2d 198, 200 (1975), we said:

When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element. . . We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might. . . . Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same "beyond-a-reasonable-doubt" standard which we apply in determining guilt or innocence at trial.

The burden of showing probable cause is on the Commonwealth. *Commonwealth v. Holton*, 432 Pa. 11, 14–15, 247 A.2d 228, 230 (1968).

■ The appellant challenges the arrest warrant because it was not sufficiently specific. It is true that we have consistently "held that descriptions equally applicable to large numbers of people will not support a finding of probable cause." *Commonwealth v. Jackson*, 459 Pa. 669, 331 A.2d 189 (1975). However, the arrest warrant in the instant case was supported by evidence of a description of the appellant. He was specifically described by a witness and who also gave a description of the type of car driven from the scene of the crime. The police knew through previous experience that these facts matched the appellant and his automobile. Thus, a warrant was issued naming appellant individually. We are satisfied that the warrant was based upon probable cause.

■ Next, Layman contends that evidence gotten at a search of appellant's father's home was illegal. A .25 caliber pistol was discovered by the police on a couch. The gun was linked to the appellant and entered into evidence against him. Layman did not live and had not been living with his father at the time of the arrest. The trial court held that Layman had no standing to challenge the search and we agree.

In *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the United States Supreme Court stated where the petitioner challenges the search of another person's possessions.

In holding that petitioner could not challenge the legality of the search of Cox's purse, the Supreme Court of Kentucky looked to our then recent decision in *Rakas v. Illinois*, [439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)], where we abandoned a separate inquiry into a defendant's "standing" to contest an illegal search in favor of an inquiry that focused directly on the substance claim that he or she possessed a "legitimate expectation of privacy" in the area searched [citation omitted].

Id. at 104, 100 S.Ct. at 2561, 65 L.Ed.2d at 641.[1]

Therefore, our Supreme Court's decision in *Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265 (1976), upon which the trial court and parties on appeal rely, which provided standing may be established when one is present at the time of the search, had a possessory interest in the evidence seized, that the offense was possessory in nature, or that one held a proprietary or possessory interest in the area searched is no longer controlling. Clearly, *Rawlings v. Kentucky*, requires that we view the totality of the circumstances and determine whether the appellant had a legitimate "expectation of privacy" in the area searched. In the instant case, we find no expectation.

1. For a discussion of recent Supreme Court decisions involving standing and the Fourth Amendment see: Burkoff, John M., 58 Or.L.R. 151 (1979).

At the time the search occurred, the appellant did not live with his father. However, Layman did occasionally stay at his father's house. In fact, at the time of the search, Layman was incarcerated related to other offenses. We cannot hold that he had a "legitimate expectation of privacy in the area searched."

■ Appellant claims "a mistrial should have been granted because the Commonwealth failed to produce an adequate bill of particulars listing all witnesses to be called for trial[.]" Appellant's brief, page 2. In *Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1976), our Supreme Court held:

Furthermore, we do not believe the Commonwealth was required to list the name of Mrs. Chesonis as a potential witness in the bill of particulars. "The function of a bill of particulars is to enable the accused to prepare for trial and prevent surprise", *Commonwealth v. Simmione*, 447 Pa. 473, 376, 291 A.2d 764, 766 (1972). The Commonwealth had properly listed the crimes charged and those witnesses it intended to call during the case in chief, thereby enabling appellant to prepare his defense.

Id., 467 Pa. at 282, 356 A.2d at 750.

In *Commonwealth v. Bartman*, 240 Pa.Super. 495, 367 A.2d 1121 (1976), we said:

Appellant's final contention relates to the bill of particulars filed by the Commonwealth. Appellant contends that the court erred in allowing the Commonwealth to call witnesses beyond those listed in the bill of particulars. However, this contention is negated by the fact that the bill of particulars states that "[t]he names and addresses of all witnesses intended to be called by the Commonwealth for the case in chief as endorsed on the Indictment, are as follows: ... *and such other witnesses* as deemed advisable by the Commonwealth." Furthermore, as will be developed in the next section, the testimony of two of the three witnesses not named in the bill of particulars was prejudicial only to appellant-Bartman. *The testimo-*

*ny of the third witness was not sufficiently prejudicial to require reversal.*

(Emphasis added.) Thus, even if a witness is called whose name was not in the complaint or bill of particulars, sufficient prejudice must be found if we are to reverse.

■ In this case, former State Police Officer, Joseph Unice, the arresting officer, was called to testify. The bill of particulars stated regarding witnesses to be called by the Commonwealth.

1. All witnesses are listed on the Information and/or complaint except Melvin Gardner, Post Office Box 392, Perryopolis, Pennsylvania, owner of Melvin's Service Station, Route 51, Perryopolis, Pennsylvania. The address of the witness Stanley Scott Burkholder is R.D. #2, Box 13–R, Perryopolis, Pennsylvania, 15473. Trooper Lloyd Oudinoit is stationed at the Pennsylvania State Police Barracks, Belle Vernon, Pennsylvania.

The complaint made no mention of Detective Unice. Thus, since no mention of Unice was made in the bill of particulars and the bill did not indicate other witnesses might be called, our inquiry must first determine whether the appellant was prejudiced by the testimony given by Officer Unice. All the testimony given at trial related to the actual arrest was given by Officer Unice. He stated:

Q. Is Harry Layman here today?

A. Yes, sir, he is.

Q. Would you point him out to the jury?

A. The gentleman in the brown suit at the far end of the counsel table.

Q. Where was he when you entered the home?

A. He was lying on the couch approximately fifteen feet from the door that we entered.

Q. Was anyone else on the couch?

A. No, sir.

Q. Did you take him from the couch?

A. Yes, sir; he was sleeping and we woke him up.

Q. Was Trooper Oudinot there at that time?

A. No, sir.

Q. How long after that did Trooper Oudinot arrive?

A. Just a matter of maybe five or ten minutes he came. Shortly after that.

Clearly, the weight of the testimony given by Officer Unice was necessary in the proceedings. The testimony of the arresting officer by its very nature is important to the Commonwealth's case, however, as we said, the arrest was made pursuant to a valid warrant. The actions of Officer Unice in arresting the appellant merely represented the mechanical effectuation of a valid arrest warrant. The testimony he gave was not prejudicial. It did not bring out any evidence not presented to the jury by other Commonwealth witnesses at other points in the Commonwealth's case.

Finally, appellant challenges the lower court's decision to denying certain questions of veniremen. The questions were:

Do you have an opinion about the control or possession and ownership of handguns which would prevent you from entering a fair and impartial judgment considering all of the evidence?

And,

In this case the victim was not armed, but the robber allegedly had a gun. Would this fact, in and of itself prevent you from giving a fair and impartial consideration to all the evidence?

The court's refusal to grant questions on voir dire will only be disturbed when there has been an abuse of discretion. *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977). We do not hold that the trial court abused its discretion.

In *Commonwealth v. Werts*, 483 Pa. 222, 355 A.2d 1316 (1978), our Supreme Court stated:

This Court has held that "the examination of jurors under voir dire is solely for the purpose of securing a competent, fair, impartial and unprejudiced jury. . . .

Neither counsel for the defendant nor the Commonwealth should be permitted to ... ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion may be or what his attitude or decision will likely be under certain facts which may be developed in the trial of the case. *Commonwealth v. Johnson*, 452 Pa. 130, 134, 305 A.2d 5, 7 (1973).

Id., 483 Pa. at 224, 395 A.2d at 1317. Clearly, trial counsel sought to ask the denied questions in order to ascertain "a juror's present impression or opinion may be on what his attitude or decision will likely be under certain facts which may be developed in the trial of the case." Id. The trial court did not abuse its discretion.

Accordingly, the judgment of sentence by the court below is affirmed.

SHERTZ, J., concurs in result.