498 A.2d 870

**COMMONWEALTH of Pennsylvania**

v.

**Donna DOTY, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Gary KIRKWOOD, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 17, 1984.

Filed Aug. 16, 1985.

Reargument Denied Oct. 8, 1985.

Marshall E. Anders, Stroudsburg, for appellant (at No. 1301).

William P. Carlucci, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Alan Ellis, Philadelphia, for appellant (at No. 1312).

Before WIEAND, DEL SOLE and POPOVICH, JJ.

WIEAND, Judge:

Donna Doty and Gary Kirkwood were tried nonjury and were convicted of criminal conspiracy and possession with intent to deliver hashish and marijuana. At trial, the Commonwealth relied upon incriminating evidence acquired by placing a tap on the telephone serving the residence of Gary and Linda Kirkwood. On direct appeal, the principal argument made by Doty and Kirkwood is that the Pennsylvania Wiretapping and Electronic Surveillance Control Act of October 4, 1978, P.L. 831, No. 164,[1] is unconstitutional or, if valid, that it was improperly applied in this case. We disagree. For this and other reasons appearing in this Opinion, we affirm the judgments of sentence imposed by the trial court.

It is well settled that a strong presumption of constitutionality attaches to statutes duly enacted by the legislature. *Estate of Cox*, 327 Pa.Super. 479, 483, 476 A.2d 367, 370 (1984) and cases there cited. Appellants bear the burden of demonstrating that the statute "clearly, palpably and plainly" violates the Constitution. *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 155, 425 A.2d 419, 421 (1981); *Estate of Cox, supra*. Appellants' argument that the Pennsylvania Wiretap Law is facially unconstitutional because it violates the right of privacy implicit in Article 1, Section 8 of the Pennsylvania Constitution is meritless. Article 1, Section 8 provides as follows:

**Sec. 8. Security from searches and seizures**

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or thing shall issue without describing them

---

**1.** 18 Pa.C.S. § 5701 et seq.

as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

This serves only to prohibit a nonconsensual electronic interception without warrant or court order issued upon probable cause. It does not prohibit all nonconsensual electronic interception of telecommunications. *Commonwealth v. Hassine*, 340 Pa.Super. 318, 354, 490 A.2d 438, 457 (1985). An argument similar to that made in this case was made to and rejected by the United States Court for the Eastern District of Pennsylvania in *United States v. Geller*, 560 F.Supp. 1309 (E.D.Pa.1983), *aff'd sub nom.*, *United States v. DeMaise*, 745 F.2d 49 (3rd Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985).

Appellants argue that the Pennsylvania Wiretap Act has been drawn more broadly than Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, which preempted the right of individual states to enact less restrictive legislation,[2] and that the Pennsylvania Act, therefore, is in violation of the Supremacy Clause of Article VI, Section 2 of the United States Constitution. The Pennsylvania Statute is less restrictive, they contend, because it (1) delegates authority to request wiretap orders to deputy attorney generals and assistant district attorneys, (2) expands upon Title III's list of crimes in which a wiretap may be used to facilitate investigation, and (3) has less stringent requirements concerning minimization of the interception of nonpertinent communications.

The arguments pertaining to the delegation of authority to "assistants" and the listing of crimes need not detain us. The application for wiretap in this case was made by the District Attorney of Lycoming County and not

**2.** See: *State v. McGillicuddy*, 342 So.2d 567, 568 (Fla.App.1977); *State v. Dowdy*, 222 Kan. 118, 120–123, 563 P.2d 425, 427–428 (1977); *State v. Siegel*, 266 Md. 256, 270, 292 A.2d 86, 94 (1972); *Commonwealth v. Vitello*, 367 Mass. 224, 245, 327 N.E.2d 819, 833 (1975); *People v. Shapiro*, 50 N.Y.2d 747, 762, 409 N.E.2d 897, 906, 431 N.Y.S.2d 422, 430 (1980); *Commonwealth v. Trignani*, 334 Pa.Super. 526, 532 n. 3, 483 A.2d 862, 865 n. 3 (1984); 18 U.S.C. § 2516(2).

by a deputy. The crimes being investigated, moreover, are also crimes listed in Title III at 18 U.S.C. § 2516(2). Thus, even if portions of the Pennsylvania Act are broader than Title III, those parts of the statute are severable and do not render the entire statute unconstitutional. See: *Commonwealth v. Hoffman*, 263 Pa.Super. 442, 451, 398 A.2d 658, 662 (1979). If some provisions of a statute are held to be invalid, the remaining provisions are not affected thereby unless the invalid provisions are so essentially and inseparably connected with the valid provisions that they cannot be executed in accordance with the legislative intent. *Department of Education v. The First School*, 471 Pa. 471, 478, 370 A.2d 702, 705 (1977); 1 Pa.C.S. § 1925. If the references in 18 Pa.C.S. §§ 5708 and 5713 to "assistants" and in § 5708 to those crimes which are not listed in 18 U.S.C. § 2516(2) are deleted from the statute, the remaining provisions are clearly capable of being executed to give effect to the legislature's intent. See: *United States v. Geller*, *supra* at 1314 (18 Pa.C.S. §§ 5703 and 5704 are severable).

■ Title III provides that every order authorizing a wiretap shall contain a requirement that the interception be conducted so as to minimize the interception of communications not subject to seizure. It also provides that no order shall be valid, in the absence of a court approved extension, for more than thirty days. 18 U.S.C. § 2518(5).[3] "Mini-

---

**3.** Section 2518(5) provides:

(5) No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.

mize" is not defined, and a list of the means or methods of minimizing interceptions has not been included in Title III. This omission in the language of the statute, however, has been remedied by judicial decision which holds that minimization must be determined on a case by case basis according to what is reasonable. *Scott v. United States*, 436 U.S. 128, 139–140, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168, 179 (1978). In determining the reasonableness of actual minimization, a reviewing court must consider many factors, including the nature of the investigation, the scope of the criminal activity, the normal use of the telephone facility, and the patterns of nonpertinent calls. *Id.* at 140–141, 98 S.Ct. at 1724–1725, 56 L.Ed.2d at 179–180. The authorizing order required by Title III, however, need only contain a general order to minimize. *United States v. Vento*, 533 F.2d 838, 852 (3d Cir.1976); *United States v. Fino*, 478 F.2d 35, 37 (2d Cir.1973), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974).

The Pennsylvania statute is more restrictive than Title III. The provisions of 18 Pa.C.S. § 5712(b) establish:

No order entered under this section shall authorize the interception of any wire or oral communication for a period of time in excess of that necessary under the circumstances. Every order entered under this section shall require that such interception begin and terminate as soon as practicable and be conducted in such a manner as to minimize or eliminate the interception of such communications not otherwise subject to interception under this chapter by making reasonable efforts, whenever possible, to reduce the hours of interception authorized by said order. Except as provided in subsection (c), no order entered under this section shall authorize the interception of wire or oral communications for any period exceeding 20 days. An extension or renewal of such an order may be granted for one additional period of not more than 20 days. No extension or renewal shall be granted unless an application for it is made in accordance with this

section, and the judge makes the findings required by section 5710 (relating to grounds for entry of order). It will be observed that the maximum duration of an intercept without extension is twenty days, not thirty days as allowed by the federal statute. It may also be observed that an order of authorization must include a provision that the reduction of hours of interception be used if possible as a means for minimizing, as compared to Title III's general directive to minimize. Appellants interpret the state statute's language "by making reasonable efforts ... to reduce the hours of interception ..." to mean that the reduction of hours of interception is sufficient minimization by itself. This, they contend, is less restrictive than Title III. We disagree with this interpretation.

A crucial factor in minimizing the interception of nonpertinent communications is the duration of the surveillance. *United States v. Martin,* 599 F.2d 880, 887 (9th Cir.1979). The legislature in Pennsylvania was aware of the importance of minimization and included a provision in the Pennsylvania statute requiring a directive in each authorizing order that the number of hours of interception be reduced as much as reasonably possible. 18 Pa.C.S. § 5712(b). This provision evidences the legislature's overriding concern for an individual's right of privacy. Appellants' too literal reading of the statute is inconsistent with this legislative intent. The statute is uniformly more restrictive than Title III,[4] and we find no basis for concluding that the legislature intended § 5712(b) to be less restrictive than Title III. The legislature required that the hours of interception be reduced and made this a critical means for minimizing; but it was not the only method for effecting minimization. Other means are also available and must be utilized, as suggested by *Scott v. United States, supra,* according to the circumstances of the case. Neither Title III nor the Pennsylvania statute requires that the means

**4.** Some of the more restrictive provisions include: a designated supervising attorney, § 5712(c); certified monitors, § 5714(a); monitor's logs, § 5714(a); and final reports, § 5712(e).

for minimizing be enumerated in each order authorizing an intercept. We conclude, for these reasons, that 18 Pa.C.S. § 5712(b) is not less restrictive than Title III and passes constitutional scrutiny.

It has generally been acknowledged that legislation which authorizes electronic surveillance infringes upon the right of privacy and, therefore, must be strictly construed. See: *State v. Catania*, 85 N.J. 418, 427 A.2d 537 (1981); *In Re: Grand Jury Investigation*, 287 So.2d 43 (Fla.1973). See also: *People v. Evans*, 78 Ill.App.3d 996, 34 Ill.Dec. 651, 398 N.E.2d 326 (1979). Appellants argue that a strict construction will suggest that the Pennsylvania statute, even if constitutional, was exceeded in the instant case.

 Doty argues first[5] that the application was defective because it was signed by the District Attorney of Lycoming County without an affirmative showing that the Attorney General was incapacitated or unavailable. We reject this argument. It is premised not upon a strict construction of the statute but upon a suggested interpretation that is absurd and unwarranted. The pertinent statutory provision, found at 18 Pa.C.S. § 5708, is as follows:

> The Attorney General, or, during the absence or incapacity of the Attorney General, a deputy attorney general designated in writing by the Attorney General or the district attorney or, during the absence or incapacity of the district attorney, an assistant district attorney designated in writing by the district attorney of the county wherein the interception is to be made, may make written application to any Superior Court Judge for an order authorizing the interception of a wire or oral communication by the investigative or law enforcement officers or agency having responsibility for an investigation involving suspected criminal activities ....

A common sense reading of this section, particularly when it is read in conjunction with the legislative intent appearing

---

5. Kirkwood's contention that the order did not meet the particularity requirement of § 5712(a)(4) has been waived. He did not argue the same issue to the suppression court.

when one reads the entire statute,[6] makes it abundantly clear that authorization has been vested in the Attorney General and also in the several District Attorneys. It is only if these officers are unavailable or incapacitated that a deputy attorney general or assistant district attorney may be designated in writing by the Attorney General or District Attorney to make the necessary application. This clear intent will not be altered because of the absence of a comma following the words "Attorney General." Punctuation does not control or affect the intention of the legislature. 1 Pa.C.S. § 1923(b).

The interpretation which we adopt is consistent with the following provisions of Title III appearing at 18 U.S.C. § 2516(2):

> (2) The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made....

It is also consistent with and supported by the debate on the Pennsylvania statute in the General Assembly. There, Representatives Scirica and Caputo engaged in the following dialogue:

> Mr. CAPUTO. Mr. Speaker, to establish legislative intent and to avoid what has been a successful challenge as to wiretaps in Federal courts on motions to suppress, you made a statement indicating that only the attorney gener-

---

**6.** 18 Pa.C.S. § 5712(c) provides that the Court shall "require the attorney general or the district attorney, or their designees, to be responsible for the supervision of the interception."

al or a district attorney might file an application before the court?

Mr. SCIRICA. Yes, Mr. Speaker.

Mr. CAPUTO. Did you mean that only the district attorney; or would that privilege be extended to assistant district attorneys?

Mr. SCIRICA. It is the attorney general or the district attorney or his written designee in his absence.

Mr. CAPUTO. Do you think that should be in the bill?

Mr. SCIRICA. Yes, Mr. Speaker, that is in the bill.

Mr. CAPUTO. Is it in the bill?

Mr. SCIRICA. Yes

Mr. CAPUTO. Okay, if it is in there, you do not have to look it up. I think you should have that in there because otherwise the attorney himself, the district attorney, would have to be present.

Mr. SCIRICA. Yes, Mr. Speaker, on page 11 it says that the attorney general or in his absence or incapacity, the attorney general de[s]ignated in writing; the same thing for the district attorney.

Legislative Journal, September 21, 1978, p. 3154.

■ For all these reasons, we conclude that the District Attorney of Lycoming County could properly make application for a wiretap without first showing that the Attorney General was unavailable or incapacitated.

■ An application for an order authorizing an intercept must be in writing and must contain, inter alia, a sworn statement by the investigating police officer which includes "the identity of the particular person, if known, committing the offense and whose communications are to be intercepted." 18 Pa.C.S. § 5709(3)(i). See also: *United States v. Donovan*, 429 U.S. 413, 428, 97 S.Ct. 658, 668, 50 L.Ed.2d 652, 668 (1977). Doty's argument that this was not done is erroneous. The application stated, "there is probable cause to believe that, in the course of the interception, wire and oral communications regarding these offenses will be intercepted from some or all of the following persons: *Donna*

*Doty,* Melvin T. Walters, Bucky McFadden, . . . ." (Emphasis added). This was an adequate identification to meet the statutory requirement.

A condition precedent to the issuance of an order authorizing an intercept is a determination by a judge of the Superior Court that "normal investigative procedures with respect to such offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ. . . ." 18 Pa.C.S. § 5710(a)(3). This is an objective standard; reliance cannot be placed solely upon a subjective belief by the Attorney General or District Attorney that normal investigative procedures will not likely succeed. In this aspect, it will be observed, the standard imposed by the Pennsylvania legislature is more stringent than the requirement imposed by Title III. It is designed to guarantee that wiretapping will not be resorted to in situations where traditional investigative techniques are adequate to expose crime. The requirement also suggests that a wiretap should not be employed as the initial step in a police investigation. See and compare: *United States v. Kahn,* 415 U.S. 143, 154 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225, 236 n. 12 (1974); *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1827, 40 L.Ed.2d 341, 353 (1974). However, the Commonwealth is not required to show that all other investigative methods have been exhausted. See: *United States v. Bailey,* 607 F.2d 237, 241–242 (9th Cir.1979), *cert. denied, Whitney v. United States,* 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980); *United States v. Vento, supra,* 533 F.2d at 849. In making this determination, moreover, the issuing authority may consider and rely upon the opinions of police experts. See: *United States v. Canon,* 404 F.Supp. 841, 845 (D.C.Ala. 1975). In reviewing the adequacy of the application to support the issuance of an order of authorization, we will interpret the application in a common sense manner, not overly technical, with due deference to the findings of the issuing authority. See: *United States v. Vento, supra* at 849; *United States v. Armocida,* 515 F.2d 29, 37–38 (3d

Cir.1975), *cert. denied, Conti v. United States,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84; *United States v. Geller, supra,* 560 F.Supp. at 1322–1323.

■ A review of the record in the instant case is persuasive that the application was adequate and that the authorization was properly issued. The application averred that normal investigative methods had been unsuccessful and expressed the opinion of the affiant that additional attempts would be fruitless. The prior unsuccessful investigation had included physical surveillance, undercover infiltration, the use of informants and a search of the Kirkwood residence. The affidavit, therefore, contained factual support for the opinion of the affiant, who was a specialist in vice and narcotics investigations. His opinion that continuing use of normal investigative techniques would be unsuccessful, in combination with the facts recited, was sufficient to permit the necessary finding by the issuing authority. Cf. *United States v. Bailey, supra* at 242; *United States v. Vento, supra* at 850; *United States v. Armocida, supra* at 38.

■ We reject appellant's argument that the use of a wiretap was premature because the Commonwealth had not utilized an investigative Grand Jury or grants of immunity to persons engaged in drug trafficking in Lycoming County. As we have already observed, the statute did not require that the use of alternative methods of investigation be exhausted. The summoning of an investigative Grand Jury is not a normal investigative technique. The expense and involvement of resources, particularly in less populated counties, are sufficiently burdensome to render the summoning of an investigative Grand Jury a truly extraordinary method for ferreting out crime. Moreover, the prior unsuccessful attempts to pierce the drug market in Lycoming County supported the affiant's belief that informants would refuse to testify even if granted immunity. They permitted the issuing authority to infer that offered grants of immunity would be less than adequate to disclose the source of drugs being distributed in Lycoming County.

■ We also reject appellant's argument that a wiretap should not have been authorized in the absence of a prior attempt to prosecute on the basis of information then available. The Commonwealth is not required to forego additional investigation into an illegal drug conspiracy merely because it may already possess sufficient evidence to establish probable cause or even evidence sufficient to permit prosecutions of some of the conspirators. See: *United States v. Bailey, supra; United States v. Armocida, supra.*

■ An application for an order authorizing interceptions of telephone communications must contain, *inter alia,* the identity of the person, if known, committing the offense under investigation and whose communications are to be intercepted. It must also contain details about particular offenses, the type of communications to be intercepted, and must show that there is probable cause to believe that pertinent communications will be transmitted on the facility under surveillance. 18 Pa.C.S. § 5709(3). The standard for determining whether probable cause existed is the same as that used to determine cause for search warrants. See: *United States v. Talbert,* 706 F.2d 464, 467 (4th Cir.1983); *United States v. Falcone,* 505 F.2d 478, 481 (3d Cir.1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975). The facts contained in the affidavit for a search warrant must be such that an independent, issuing authority, exercising reasonable caution, can conclude that the items sought are connected with criminal activity and that they will be found in the place to be searched. *Commonwealth v. Council,* 491 Pa. 434, 443, 421 A.2d 623, 627 (1980); *Commonwealth v. Ryan,* 300 Pa.Super. 156, 167, 446 A.2d 277, 283 (1982). Similarly, in an application for a wiretap, the Commonwealth must establish probable cause to believe that (1) a person has or is about to commit one of the offenses enumerated in the statute, (2) that communications relating to that offense will be transmitted, and (3) that such communications will be intercepted on the facility under surveillance. See: *United States v. Armocida, su-*

*pra,* 515 F.2d at 35. Our review of the application in the instant case persuades us unequivocally that the application contained probable cause which was adequate to support the issuance of a wiretap order.

The September 30, 1981 wiretap order was the product of more than two years of investigative police work. Police had at various times conducted physical surveillance of the Kirkwood residence and had obtained pertinent information from confidential informants. The key informant was a member of the conspiracy. He had provided information concerning the sale of controlled substances, names of buyers, and an organizational chart. The same informant had stated that the telephone in the Kirkwood residence was being used to transmit messages concerning the sale of drugs. The telephone facility was listed under the name of Fritz Ladu, who in reality was Kirkwood's dog. Information provided by informants regarding Kirkwood's drug activities had been corroborated by police investigation. Information from informants that Kirkwood was selling drugs from his residence to named persons had been corroborated by use of a pen register and by toll records of the telephone company. A search of Kirkwood's residence on April 30, 1981, pursuant to search warrant, had led to the seizure of drug paraphernalia. Finally, the Commonwealth's key informant stated that he had observed marijuana in the Kirkwood residence and that Linda Kirkwood had told him she would sell marijuana to him inside the residence during the week of September 6–12, 1981, but that Kirkwood would then be going to Michigan on a fishing trip. Kirkwood did in fact go fishing in Michigan. The wiretap order was obtained after he returned to Lycoming County.

■ Appellants argue that information obtained from the confidential informants was stale. Although some of the information derived from informants was not current, the delay in acting thereon occurred while police made efforts to corroborate and confirm the same. This they were able to do by other, fresher information obtained

during a continuing investigation of suspected drug trafficking in Lycoming County. The information from which probable cause was found to exist was not impermissibly stale.

 Minimization of the interception of communications not subject to seizure is a crucial requirement of a lawful wiretap. *Scott v. United States, supra; Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Without minimization, surveillance of telephone conversations amounts to a general search and an unreasonable intrusion into a citizen's privacy. The purpose of minimization is to reduce the scope of an intrusion while at the same time allowing legitimate law enforcement aims to be pursued. An overly restrictive interpretation of the minimization requirement will make it impossible to use a telephone intercept as an effective method for investigating activities of organized crime, such as drug trafficking, gambling, political corruption, etc., which invariably are carried on in secret. See: *United States v. Cox,* 567 F.2d 930 (10th Cir.1977), *cert. denied,* 435 U.S. 927, 98 S.Ct. 1496, 55 L.Ed.2d 522 (1978). This is why minimization must be a question of what is reasonable and practical under the circumstances of each case. *Scott v. United States, supra,* 436 U.S., at 140, 98 S.Ct. at 1724, 56 L.Ed.2d at 179; *United States v. Armocida, supra,* 515 F.2d at 42. The Commonwealth has the burden of proving at a suppression hearing that the manner in which the wiretap was conducted did not impose a greater invasion of privacy than was reasonably necessary under the circumstances. See: *United States v. Armocida, supra* at 43. See also: *Commonwealth v. Ryan,* 296 Pa.Super. 222, 226–228, 442 A.2d 739, 741–742 (1982). Circumstances to be considered include, but are not limited to, the nature of the investigation, the length of calls, the percentage of pertinent calls, whether calls are repeatedly between the same parties, whether the contents of calls are ambiguous, whether coded or guarded language is used, and whether patterns develop during the surveillance. *Scott v. United States, supra.*

■ We have painstakingly reviewed the transcript of intercepted communications in this case, and we conclude that minimization was adequate. The investigation involved an allegedly widespread but relatively close knit conspiracy to traffic in drugs. The objectives of the investigation were to ascertain the scope of the conspiracy and identify the conspirators. The Commonwealth possessed information that the tapped telephone facility was being used extensively in furtherance of the conspiracy. Information obtained by use of a pen register tended to confirm this and showed that the facility was being used almost continuously. Twenty-four hour a day surveillance, therefore, was not unreasonable. The Commonwealth performed extrinsic minimization by terminating the surveillance eight days prior to the order's termination date. Termination, it has been said, is the most effective means of minimizing. See: *United States v. Chavez,* 533 F.2d 491, 493 (9th Cir.1976), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837.

■ Intrinsic minimization, however, is also required. *Scott v. United States, supra.* Intrinsic minimization is most frequently achieved by a pre-set plan, with court approval and supervision. One of the factors to consider in reviewing the reasonableness of the monitor's minimization is the extent of judicial supervision. See: *United States v. Hyde,* 574 F.2d 856, 869 (5th Cir.1978); *United States v. Harvey,* 560 F.Supp. 1040, 1075 (S.D.Fla.1982). An initial minimization plan depends upon information known at the time of the application, and usually is less stringent. Where it is a course of conduct embracing multiple parties and extending over a long period of time that is being investigated, the initial plan may properly authorize interception of all communications during their entire durations or for substantial portions thereof. See: *United States v. Abascal,* 564 F.2d 821, 827 (9th Cir.1977), *cert. denied,* 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978); *United States v. Chavez, supra* at 493–494. This is especially so where coded or guarded language is used, or where information concerning the extent of a conspiracy, the identity of

the conspirators, and other details of the conspiracy are sought. See: *United States v. Abascal, supra; United States v. Chavez, supra.* If information obtained during the course of surveillance allows a more restrictive interception of communications, subsequent plans should be modified accordingly. *Scott v. United States, supra.* If a pattern of nonpertinent communications develops, maximum minimization becomes necessary. *United States v. Abascal, supra* at 827; *United States v. Chavez, supra* at 494.

Appellants contend that the Commonwealth failed to introduce any evidence of intrinsic minimization at the suppression hearing. The record belies this contention. The Commonwealth introduced into evidence the transcript of intercepted communications, the minimization plans, the monitor's plan review log, progress reports, monitor's logs, and the final report. Assistant District Attorney William Carlucci testified that he prepared the minimization plans, obtained their approval from the authorizing judge, instructed the monitor concerning minimization, visited the command post to ensure the monitor's review of the plan at each shift change and to listen to tapes to check on the minimization actually performed. He also made progress reports to the authorizing judge and submitted a final report.

■■■ The initial minimization plan provided that all calls would be intercepted to determine whether they pertained to the conspiracy. All communications believed to be pertinent were to be monitored throughout their duration. If a monitor believed a particular communication to be nonpertinent, interception was terminated for a period of two minutes. Thereafter, the monitor would again intercept communications to determine whether the same had become pertinent. An initial intercept was not permitted to continue for more than five minutes, and subsequent interceptions were limited to periods of one minute. The interception of privileged communications was prohibited. The five minute period was not unreasonable where, as here, a closely knit

conspiracy was being investigated. See: *United States v. Hinton*, 543 F.2d 1002, 1012 (2d Cir.1976), *cert. denied, Bates v. United States*, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 783 (1977). Only five nonpertinent calls were intercepted for more than three minutes and forty seconds during the twelve days of surveillance; and minimization was performed during all but one of those five calls. Approximately 45% of the 227 calls intercepted appeared to be pertinent to the investigation. Intercepted communications had used guarded language. After the first week of surveillance, the limit on the initial interception period was reduced to three minutes.

Appellants argue that the Commonwealth failed to recognize patterns or categories of nonpertinent communications and consequently failed to minimize interception of these calls. Appellants have been unable to identify any such communications; and our review of the record does not disclose an inadequate minimization with respect to such calls. The only repetitive calls that might have been nonpertinent were communications between Linda Kirkwood and a woman addressed as Nina or Sherry. The transcript of intercepted communications discloses, however, that the monitors quickly determined these communications to be nonpertinent and progressively minimized the interceptions of such calls.

■■■■■ Contrary to appellants' argument, a subjective evaluation of the monitors' good faith execution of the minimization plan was not required by the Fourth Amendment. *Scott v. United States, supra.* The conduct of the monitors must be reviewed objectively in light of known facts and circumstances. The Pennsylvania statute, similarly, does not require subjective evaluation. It provides that interception may not be authorized for a period of time in excess of that necessary under the circumstances, that interception must begin and end as soon as practicable, and that interception of nonpertinent communications must be minimized by reasonable efforts whenever possible. 18 Pa.C.S. § 5712(b). This is an objective standard. We will

not alter the legislature's expressed intent by requiring proof of a subjectively proper state of mind on the part of the monitors.

■ Assistant District Attorney Carlucci testified that the monitors had complied with the minimization plans. His testimony was supported by the transcript of intercepted communications. The use of the facility in furtherance of the conspiracy had been extensive, the language of pertinent communications had been extremely guarded, numerous calls had been of short duration, and no clear patterns of nonpertinent communications had developed. These circumstances had rendered it difficult for the monitors to determine whether communications were pertinent. We conclude, in view of all these circumstances, that the minimization performed by the monitors was reasonable. Because the minimization was reasonable, we do not consider whether the penalty for inadequate minimization with respect to some calls must be suppression of information derived from all calls intercepted.

A final report is required by 18 Pa.C.S. § 5712(e) and "shall be filed with the court at the time the authorized surveillance is terminated." Neither the federal statute nor the law of any other state has a comparable requirement. This requirement of the Pennsylvania statute has not heretofore been interpreted by an appellate court of this Commonwealth. Appellants argue that a final report must be filed simultaneously with the termination of the surveillance and that a failure to file the same simultaneously results in a need to suppress all information acquired during the surveillance. The Commonwealth, on the other hand, would interpret this section of the Pennsylvania statute to require the filing of a final report within a reasonable time after surveillance is terminated. In view of other safeguards built into the statute, the Commonwealth argues also that suppression is an inappropriate response to a failure to file the final report timely.

In addition to a final report, the Pennsylvania statute provides that the court shall cause an inventory to be filed.

See: 18 Pa.C.S. § 5716. This must be accomplished "[w]ithin a reasonable time but not later than 90 days after the termination of the period of the order or of extensions or renewals thereof." *Id.* The function of a final report, the Commonwealth suggests, is to assist the supervising judge in fulfilling his duty of causing an inventory to be filed. If this be so, the ninety day time period for filing the inventory would have significance in determining the time for filing a final report.

The provisions of 18 Pa.C.S. § 5720 establish that the contents of intercepted communications shall not be disclosed in any court of the Commonwealth "unless not less than ten days before the trial, hearing or proceeding the parties to the action have been served with a copy of the order, the accompanying application and the final report under which the interception was authorized...." This section too has relevance in determining the time within which the legislature intended that a final report be filed.

■ We conclude that it would be an unreasonable interpretation of 18 Pa.C.S. § 5712(e) and serve no essential purpose to require suppression of all evidence obtained by an intercept whenever the final report is not filed simultaneously with the termination of surveillance. The final report must contain "a complete list of names of participants and evidence of offenses discovered." *Id.* For the preparation of such a report, a reasonable amount of time must be allowed.

■ The final report in this case was filed 42 days after the surveillance had been terminated but more than ten days before it was to be disclosed in any proceedings before the court. The delayed filing was approved by the issuing authority. Was this delay unreasonable? We think not. Not only was the delay sanctioned by the issuing authority but it caused no prejudice. The final report was filed within the ninety day period within which to file the inventory and did not violate the time constraints of 18 Pa.C.S. § 5720.

It is unnecessary that we determine whether a total failure to file a final report constitutes a violation of 18 Pa.C.S. § 5712(e) which requires suppression of the contents of intercepted communications. See: 18 Pa.C.S. § 5721(a)(3). Where a final report is filed within a reasonable time following termination of the surveillance, suppression is not warranted. Federal courts, which have considered whether suppression is necessary where an inventory has been served late, have uniformly held that evidence will not be suppressed in the absence of prejudice resulting from the tardy filing. See: *United States v. Barletta,* 565 F.2d 985 (8th Cir.1977); *United States v. Chun,* 503 F.2d 533 (9th Cir.1974); *United States v. Harvey, supra,* 560 F.Supp. at 1057; *United States v. Lilla,* 534 F.Supp. 1247, 1273 (N.D.N.Y.1982), *rev'd on other grounds,* 699 F.2d 99 (2d Cir.1983); *United States v. Lawson,* 334 F.Supp. 612 (E.D.Pa.1971). In addition, the Supreme Court of Pennsylvania has held that suppression of evidence is an inappropriate remedy except where suppression is necessary to protect fundamental constitutional rights. See: *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985). See also: *Commonwealth v. Goodman,* 500 Pa.Super. 1117 (1985). We conclude, therefore, that suppression of the contents of the intercepted communications was not required under the circumstances of this case because of the date on which the final report was filed; and the trial court properly so held.

Appellants have made several additional arguments not directed against wiretap evidence. Kirkwood argues that the evidence was insufficient to support the jury's verdict. We will not recite the evidence here. Suffice it to say that clearly it was sufficient to sustain Kirkwood's convictions. Similarly, we reject his argument that the record failed to demonstrate an ability on his part to pay fines of $20,000 as imposed by the court. There is enough to show a lifestyle enabling him to pay the fine assessed. Doty argues that probable cause did not exist to search her residence because the information in the affidavit was obtained by using an

illegal wiretap. Because we have held that the wiretap was legal, this argument must fail.

 Finally, appellants contend that the suppression court erred when it held that they lacked standing to challenge the legality of the searches conducted of the other's residence or vehicle. In holding as it did, the court relied upon a decision of this Court in *Commonwealth v. Layman*, 290 Pa.Super. 244, 434 A.2d 735 (1981), which, in interpreting the Pennsylvania Constitution, had applied and followed the decision of the United States Supreme Court in *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). *Rawlings* held that a defendant did not have "automatic standing" to challenge the search of and seizure from property owned and/or controlled by another but that standing depended upon the totality of the circumstances. In *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983), decided after the trial court's decision in the instant case, the Supreme Court of Pennsylvania overruled *Layman* and held that a defendant had "automatic standing" to challenge the validity of searches and seizures under the Pennsylvania Constitution. In this case, appellants had been charged, inter alia, with conspiracy to possess and deliver controlled substances. The substances seized during searches of their residences and Kirkwood's vehicle were introduced to sustain charges against both appellants. Therefore, they had standing to challenge the legality of the several searches.

 Nevertheless, an examination of the affidavits for warrants to search appellant's residences and Kirkwood's vehicle discloses clearly the existence of probable cause to issue the search warrants. The pre-trial suppression court made findings of probable cause after a hearing in which both appellants participated. Although their challenge to the existence of probable cause was limited because of the court's ruling regarding standing, the issue of probable cause for each search warrant was fully litigated. The existence of probable cause in each case must be determined by examining the written affidavit for each

warrant. Our own examination of these affidavits discloses the existence of such cause. Perhaps this is why Kirkwood, on appeal, has not challenged the suppression court's finding that probable cause existed to search his residence and vehicle. Doty has not contended that there was any specific inadequacy in the affidavits for the Kirkwood searches. Similarly, she has not alleged any additional facts that would have been sufficient to destroy the existence of probable cause appearing in the written affidavit. Certainly she had no greater expectation of privacy with respect to Kirkwood's residence and car than Kirkwood, himself, had in his own home and vehicle. Moreover, Doty's only challenge to the search of her own residence was based upon an asserted illegality of the wiretap. Kirkwood, like Doty, has not indicated to the court any facts that would support a finding that the affidavit for the warrant to search Doty's residence failed to establish probable cause. It is abundantly clear, therefore, that even though the suppression court incorrectly held that appellants lacked standing, neither party can point to any basis on which the court could have suppressed the contraband found in the other's residence or in the Kirkwood vehicle.

The judgments of sentence are affirmed.