637 A.2d 1036

**COMMONWEALTH of Pennsylvania**

v.

**William Robert BIRDSEYE, Appellant (Two Cases).**

Superior Court of Pennsylvania.

Argued Nov. 30, 1993.

Filed March 4, 1994.

168

170

Thomas A. Crawford, Jr., Pittsburgh, for appellants.

Thomas N. Farrell, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, President Judge, JOHNSON and MONTGOMERY, JJ.

JOHNSON, Judge:

We are asked to determine whether prostitution is an offense dangerous to life or limb within the sweep of both federal and state wiretapping statutes so as to warrant wire-

tapping for investigations of conduct promoting prostitution. We find, on the record presented on this appeal, that the trial court committed no error in concluding that promoting prostitution does involve danger to life or limb, and that the Pennsylvania Wiretapping and Electronic Surveillance Control Act was not violated. Accordingly, we affirm the judgments of sentence.

A jury found the Birdseyes guilty of the following charges: corrupt organizations, 18 Pa.C.S. § 911(b)(3); promoting prostitution, 18 Pa.C.S. § 5902(b)(7); selling obscene materials (two counts), 18 Pa.C.S. § 5903(a)(2); interception of wire communications, 18 Pa.C.S. § 5703(1); and, possession of intercepting devices, 18 Pa.C.S. § 5705(1). Post-trial motions were filed and denied. Father was sentenced to not less than five nor more than twenty years' imprisonment, and Son was sentenced to not less than three nor more than twenty years' imprisonment. Motions to modify their sentences were denied, and these appeals followed.

The trial judge, the Honorable Raymond A. Novak, summarized the facts as follows:

> The defendants are the owner-managers of several adult bookstores in Western Pennsylvania, one of which was located in Allegheny County. They were accused of maintaining a Corrupt Organization by using the bookstores for prostitution and the sale of pornography. The Commonwealth called many witnesses, including undercover state troopers, former employees of the Birdseyes' store, former customers, former associates and even prostitutes who used the Birdseyes' facilities. Additionally, the Superior Court of Pennsylvania authorized a wiretap of various telephones and the police obtained hundreds of taped telephone calls, a great number of which were introduced into evidence in the case.

> The Commonwealth's evidence tended to show that the Birdseyes were intimately involved in the operation of the bookstores. Two male prostitutes testified that they used the defendants' bookstores for purposes of engaging in prostitution. The former manager of one of the stores

testified that the use of the facilities by prostitutes was open and notorious; moreover, he testified about the alteration of the video booths with "glory holes" for purposes of engaging in sexual contact between the video booths. Many of the tapes indicated that [Son] would add holes and have some covered up from time to time; the carpenter who cut the holes between the video booths also testified.

A state trooper testified that he purchased a magazine entitled, "Tortured Ladies," and a video entitled, "Breeders," from the Boulevard Bookstore in downtown Pittsburgh. . . .

A separate operation stemming from the bookstores involved only [Father]. He managed a "bachelor party" operation. Many of the tapes consisted of recorded phone calls between [Father] and prospective customers about hiring dancers for bachelor parties. [Father] told the callers that there would be an additional charge if the caller wanted the dancers to "play" after the party. Dancers testified about their performance at various parties. Two customers testified about the bachelor parties which they arranged through [Father]. Moreover, state troopers testified about an undercover operation in which they arranged for dancers and also, for an extra $200, for the dancers to "play" afterwards.

Finally, the defendants were charged with illegally taping the conversations of their employees, and in this regard, [a t]rooper testified about recovering the recording devices from their stores during the execution of a search warrant.

The defendants testified in their own behalf and indicated that they did not promote prostitution and ran a legitimate business.

Trial Court Opinion, dated November 7, 1991, at 3–5 (citations omitted).

On appeal, the Birdseyes argue that (1) the evidence was insufficient to sustain the verdict; (2) the verdict was against the weight of the evidence; (3) the interception of their wire communications violated Title 18 of the United States Code;

(4) the interception of the wire communications was without sufficient probable cause; (5) the trial court abused its discretion by denying their motion to sever; (6) they were denied sufficient discovery; (7) they were denied sufficient particulars; (8) they were denied compulsory process; (9) they were denied the right to confront witnesses; (10) their right to present their case was limited; (11) the jury was erroneously instructed; and, (12) the sentence was improper.

The Birdseyes first assert that there was insufficient evidence to sustain the charges of corrupt organizations, promoting prostitution, obscenity and wiretapping. The Birdseyes also contend that Father was entrapped by government agents concerning his corrupt organizations charge based upon female prostitution. In presenting their argument on these issues, however, the appellants neither cite to the record nor do they cite to any case law to support their allegations. As a result, we will not review this argument and find that these issues have been waived. Pa.R.A.P. 2119 and 2132; *Commonwealth v. Shaw,* 494 Pa. 364, 370 n. 3, 431 A.2d 897, 900 n. 3 (1981) (failure to elaborate on mere assertion in brief that admission of confession violated fifth amendment results in waiver); *Commonwealth v. Badman,* 398 Pa.Super. 315, 322–23 n. 2 and n. 3, 580 A.2d 1367, 1370 n. 2 and n. 3 (1990) (issue waived if argument is mere assertion); *Commonwealth v. Long,* 367 Pa.Super. 190, 197–98, 532 A.2d 853, 857 (1987), *appeal denied,* 518 Pa. 617, 541 A.2d 744 (1988) (we will not review issues that are not properly developed by citation to the record and reference to supporting case law).

As their second issue, the Birdseyes maintain that the verdict was against the weight of the evidence for the same reasons that the evidence was insufficient to sustain their convictions. However, sufficiency of the evidence claims are distinct from weight of the evidence claims, as there are different standards of review as well as separate remedies involved. *Commonwealth v. Whiteman,* 336 Pa.Super. 120, 485 A.2d 459 (1984). Indeed, in making a claim that the verdict was against the weight of the evidence, it is conceded that there was sufficient evidence to sustain the verdict.

*Commonwealth v. Murray,* 408 Pa.Super. 435, 439, 597 A.2d
111, 113 (1991), *appeal denied,* 529 Pa. 668, 605 A.2d 333
(1992), citing *Commonwealth v. Taylor,* 324 Pa.Super. 420, 471
A.2d 1228 (1984). Moreover, the Birdseyes failed to provide
any separate argument in support of the weight of the evi-
dence issue. Because the Birdseyes failed to distinguish
between their sufficiency and weight of the evidence claims
and presented no argument regarding the weight of the
evidence, we deem their weight of the evidence issue waived.
*See Long, supra; see also Whiteman, supra* (boilerplate alle-
gation that verdict was against weight of evidence waives
issue).

■ In their third issue, the Birdseyes argue that the trial
court erred in finding that a judge of this Court, the Honor-
able Zoran Popovich, lawfully issued search warrants allowing
the interception of wire communications. They contend that
Title III of the Omnibus Crime Control & Safe Streets Act of
1968 (Title III), 18 U.S.C. § 2510–2520, prohibited the authori-
zation of the wiretaps. Title III provides that state investigat-
ing agencies may utilize wiretaps:

> when such interception may provide or has provided evi-
> dence of the commission of the offense of murder, kidnap-
> ping, gambling, robbery, bribery, extortion, or dealing in
> narcotic drugs, marijuana or other dangerous drugs, or
> other crimes dangerous to life, limb, or property, and pun-
> ishable by imprisonment for more than one year....

18 U.S.C. § 2516(2). The Pennsylvania Wiretapping and
Electronic Surveillance Control Act (Wiretap Act), 18 Pa.C.S.
§ 5701 *et seq.,* sets forth the following:

> **§ 5708. Order authorizing interception of wire or oral
> communications**
>
> The Attorney General ... may make written application
> to any Superior Court Judge for an order authorizing the
> interception of a wire or oral communication ... when such
> interception may provide evidence of the commission of any
> of the following offenses, or may provide evidence aiding in

the apprehension of the perpetrator or perpetrators of any of the following offenses:

* * * * * *

(2) Under this title, where such offense is dangerous to life, limb or property and punishable by imprisonment for more than one year:

* * * * * *

Section 5902 (relating to prostitution and related offenses)

* * * * * *

(5) Any offense set forth under the act of November 15, 1972 (P.L. 1227, No. 272) [Corrupt Organizations statute].

18 Pa.C.S. § 5708. The trial court found that the crimes listed by the Commonwealth in the wiretap request satisfied the requirement of 18 U.S.C. § 2516(2) that the crime be "dangerous to life, limb, or property." Judge Novak explained:

In its brief opposing the motion to suppress, the Commonwealth asked this court to take judicial notice of the Surgeon General's report on AIDS [Acquired Immunodeficiency Syndrome]. After considering briefs on this issue, this court declined to take judicial notice of the entire report, but did take notice of the fact that at the time of the Commonwealth's application to the Superior Court for the wiretap (1986), our country was experiencing a health crisis brought on by a sexually transmitted virus which causes the fatal disease known as AIDS. We concluded that this fact was so widely known in our society by the mid-eighties that to ignore it would be placing one's head in the sand.

Trial Court Opinion, *supra* at 14. "The doctrine of judicial notice is intended to avoid the necessity for the formal introduction of evidence in certain cases when there is no real need for it,—where a fact is so well established as to be a matter of common knowledge." *Commonwealth v. Brown,* 312 Pa.Super. 383, 385, 458 A.2d 1012, 1012–13 (1983) (citing cases). Although the Birdseyes do not dispute the fact that AIDS was a health crisis in 1986, they do take exception to the judge's decision to take judicial notice of this fact. The appellants

assert that prostitution does not constitute a crime dangerous to life, limb or property, and, therefore, a wiretap should not have been authorized.

■■■ The spread of the fatal disease AIDS has caused an enormous health crisis in this country, hence, we cannot find that the trial court erred in taking judicial notice of that fact. As a result, we are unable to conclude that the trial court erred in its determination that a prostitution business, such as the one operated by the appellants, was a danger to life. Under the facts presented in this case, we are constrained to conclude that the wiretaps, which permitted further investigation of the prostitution activities, did not violate either the federal or state statutes.

■■■ In support of their argument that prostitution is not a crime dangerous to life, the Birdseyes rely on *People v. Shapiro,* 50 N.Y.2d 747, 431 N.Y.S.2d 422, 409 N.E.2d 897 (1980). This case, however, is factually distinguishable. In *Shapiro,* the defendant was convicted of sodomy and endangering the welfare of a minor. He was also charged with promoting prostitution as a result of a single incident in which other adults brought young male prostitutes to his home to engage in sexual behavior. This information was learned through court-ordered wiretapping on defendant's telephone. The court, however, reversed his conviction holding, *inter alia,* that the wiretap exceeded the bounds of 18 U.S.C. § 2516(2). The majority reasoned that because Title III was designed to permit state wiretaps for a "class of major offenses that were either 'intrinsically serious or * * * [were] characteristic of the operations of organized crime[,]'" the wiretap was declared invalid because the crime involved, a single event of promoting prostitution, was not a crime dangerous to life or limb. *Shapiro, supra* at 764, 431 N.Y.S.2d at 431–32, 409 N.E.2d at 907. We, however, agree with the trial court that *Shapiro* is inapposite. *Shapiro* dealt with only a single incident of promoting prostitution, and "not a vast criminal enterprise promoting anonymous sex for profit...." Trial Court Opinion, *supra* at 20.

The Birdseyes also cite to *United States v. Millstone Enterprises, Inc.* 684 F.Supp. 867 (W.D.Pa.1988), as support for their argument that organized prostitution is not a crime dangerous to life or limb. That case involved the same wire interceptions here under review. The distinguished district court Judge, Glenn E. Mencer, denied an application for a contempt sanction and ruled that a corrupt organization involved in prostitution was indistinguishable from the crimes considered in *Shapiro.* On appeal, the United States Court of Appeals for the Third Circuit reversed. *United States v. Millstone Enterprises, Inc.,* 864 F.2d 21 (1988). It held that the question regarding the legality of the wiretap had been raised in the district court in an earlier, summons enforcement proceeding and the district court's failure to rule on that issue when first raised precluded the court from considering the legality of the wiretap in the subsequent contempt proceeding. *Id.* at 23. The court of appeals expressly refused to rule upon the merits of the contention that the wiretap was illegal or upon the question whether such illegality could be raised in subsequent proceedings. *Id.* at 24 n. 1. The court of appeals remanded the matter to the district court for entry of an appropriate civil contempt sanctioning order. *Id.* at 24.

We conclude that neither of these cases, upon which the Birdseyes principally rely, provide support for the contention that Judge Novak erred in refusing to suppress the wiretap evidence received as a result from the warrants authorized by Judge Popovich.

■ Next, the Birdseyes claim that the interception of their wire communications was without sufficient probable cause in the affidavit. In this case, the District Attorney sought authorization to intercept the telephone communications of the Birdseyes concerning offenses in violation of 18 Pa.C.S. § 5902 (prostitution and related offenses) and 18 Pa.C.S. § 911 (corrupt organizations). The standard for determining whether probable cause existed for an order authorizing interception of telephone communications is the same as that used to determine probable cause for search warrants.

*Commonwealth v. Doty*, 345 Pa.Super. 374, 397, 498 A.2d 870, 881–82 (1985), *cert. denied,* 479 U.S. 853, 107 S.Ct. 185, 93 L.Ed.2d 119 (1986). In determining probable cause for search warrants, Pennsylvania has adopted the "totality of the circumstances" test set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and followed in *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). The Birdseyes would have us apply the pre-*Gray* two-prong test set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which required that the issuing authority see, on the face of the affidavit of probable cause, both the informant's basis for his knowledge and independent facts showing the reliability of the informant. This we cannot do. The test now utilized for analyzing warrants is as follows:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed."

*Commonwealth v. Karns,* 389 Pa.Super. 58, 61, 566 A.2d 615, 616 (1989), *appeal denied,* 525 Pa. 632, 578 A.2d 927 (1990) (citations omitted).

Similarly, in an application for a wiretap, the Commonwealth must establish probable cause to believe that (1) the person whose communication is to be intercepted has committed an offense as provided in the state wiretap law, 18 Pa.C.S. § 5701 *et seq.,* (2) communications concerning that offense will be transmitted, and (3) such communications will be intercepted on the facility under surveillance. *Doty, supra* at 397, 498 A.2d at 882; *see also* 18 Pa.C.S. § 5710. In "reviewing the adequacy of the application to support the issuance of an order of authorization, we will interpret the

application in a common sense manner, not overly technical, with due deference to the findings of the issuing authority." *Doty, supra* at 395, 498 A.2d at 881.

Our review of the application in the present case persuades us that the application contained probable cause which was adequate to support the issuance of a wiretap order. The District Attorney first alleged that Father promoted prostitution in violation of § 5902 and violated the corrupt organizations statute by being involved in a pattern of racketeering activities, i.e., the business of female prostitution. Two confidential informants, Source One and Source Two, supplied information to the police on previous occasions. Their information led to the arrest and conviction of various individuals relative to charges of prostitution and related offenses. Source One stated specifically that he/she had dealt with Father both in person and by telephone, and had personally observed and/or participated in conversations with Father and that the telephone was used to make arrangements for females to be used in the prostitution business. Moreover, Source One indicated that the phone numbers given to him/her were Father's numbers, a fact substantiated by police investigation of phone records. In addition, Source Two stated that he/she had spoken to Father in person and by telephone, at numbers provided by Father, about integrating a female into the prostitution business. Father had previously indicated to Source Two that he (Father) was involved in the prostitution business and was planning an expansion of that business. Also, officers in the organized crime unit made arrangements with Father for a party with two females. After arriving with the females, Father then solicited the officers by offering sex with the females in exchange for money.

The District Attorney also asserted that Father and Son violated the corrupt organization statute by engaging in various racketeering activities, i.e., distributing obscene materials in the adult bookstore business and promoting prostitution in the bookstores. Information set forth in the application for the wiretaps established the following: (1) Father and Son owned four adult bookstores, and Son was active in managing

the stores; (2) police officers purchased several obscene magazines and videos in the Birdseyes' bookstores; and (3) prostitutes picked up customers and brought them to the bookstores or met customers within the bookstores, performed sex acts in the privacy of booths located in the stores, and accepted pay for their services. Further, it was alleged that this prostitution activity was open and notorious; known to both employees and appellant/owners of the stores.

Based on the information provided in the application for the wiretaps, we find that there was a substantial basis for concluding that probable cause existed to order the interception of the telephone communication. *See Karns, supra; Doty, supra.*

Next, we turn to issues 5, 6, and 7, in which the Birdseyes argue that they were improperly denied a motion to sever counts, denied sufficient discovery and denied sufficient particulars. After a thorough review of the record, the briefs of the parties, the applicable law and the Opinion of the trial court, it is our determination that there is no merit to issues 5, 6 and 7 raised in the Birdseyes' appeals. The Opinion of the trial judge, the Honorable Raymond A. Novak, comprehensively discusses and adequately disposes of the questions presented. As to issue 7, we would only add the more recent case of *Commonwealth v. Hassine,* 340 Pa.Super. 318, 490 A.2d 438 (1985), to show that the trial court properly denied the appellants' request for a more detailed bill of particulars. Accordingly, we affirm issues 5, 6 and 7 on the basis of the Trial Court Opinion at 26–28, 33–40.

The Birdseyes, in their eighth and ninth issues, respectively, allege, without elaboration, that they were denied compulsory process when the court refused their request to reopen the case in order to call a witness, and were denied the right to confront their accusers. Again, we find that the appellants have failed to adequately develop an argument regarding these claims, and they also fail to cite to any authority that supports their assertions. *See Commonwealth v. Long, supra.* Furthermore, in the confrontation issue, the Birdseyes cite to various pages in the trial transcript, but in essence ask that

we develop an argument for them. It is not this Court's function or duty to become an advocate for the appellants. *Commonwealth v. Sanford*, 299 Pa.Super. 64, 445 A.2d 149 (1982). Thus, we conclude that these contentions have been waived. *See Commonwealth v. Badman, supra.*

■ Next, the Birdseyes contend that the right to present their case was limited. Specifically, they claim that the trial court restricted their proof of community standards regarding obscenity by limiting their comparable items to only one hour of videotape. Here, the Commonwealth objected to the use of videotapes to demonstrate community standards. This objection, however, was overruled, and the trial court decided to place a time limit of one hour on the video presentation. A review of the record shows that defense counsel had no objection to this time limitation and, moreover, stated that he "[didn't] want to see more than one hour." N.T., May 9–22, 1990, at 1193. Indeed, the jury was shown a one hour video composed of various excerpts from movies, and defense counsel made no objection or complaint about the time limitation. N.T., June 8–21, 1990, at 2336–39. Defense counsel's acceptance of the one hour time limit, without objection, constitutes waiver. *See Commonwealth v. Purcell*, 403 Pa.Super. 342, 589 A.2d 217 (1991), *appeal denied*, 529 Pa. 657, 604 A.2d 248 (1992).

■ In their eleventh issue, the Birdseyes claim that the trial court erroneously instructed the jury regarding the law of obscene materials and corrupt organizations.

When reviewing a claim that the trial court erred in instructing the jury, the scope of appellate review is whether the court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. This court will look at the charge in its entirety against the background of evidence in the case to determine whether error was made and whether it was prejudicial.

*Butler v. Kiwi, S.A.*, 412 Pa.Super. 591, 596, 604 A.2d 270, 272 (1992), *appeal denied*, 531 Pa. 650, 613 A.2d 556 (1992) (citation omitted). First, the Birdseyes contend that the jury was confused when the trial court instructed that the jury could

find all of the materials shown to be obscene. On the contrary, a review of the charge shows that the trial court instructed the jury as follows:

> To a certain extent, you will in your deliberations, I presume, compare the various materials, but ultimately ... it is for you to determine what the community standards were at this time. You may conclude, after you have reviewed the evidence, that none is obscene ... or you can conclude that all of it is obscene.
>
> Of course you are not charged with that conclusion in your responsibilities, but only to determine whether Breeders and Tortured Ladies are obscene. You could also conclude that some of it is obscene and some of it is not obscene.

N.T., June 8–21, 1990, at 2746–47. The jury also was instructed that they should look at all of the evidence presented by the parties as well as utilizing their own experience. *Id.* at 2747.

The Birdseyes' additional contention, that the trial court improperly instructed the jury as to corrupt organizations, is equally without merit. The judge told the jury that they must find that the appellants (1) were "associated with a certain enterprise; in this case, a chain of adult bookstores; and [ (2) ] ... participated directly or indirectly in the conduct of the affairs of that chain of adult bookstores through a pattern of racketeering activity." *Id.* at 2748. The court's charge followed the standard jury instructions and accurately explained the law of corrupt organizations. *See* Pennsylvania Standard Criminal Jury Instructions 12.911.; *Bailey v. Pennsylvania Electric Co.,* 409 Pa.Super. 374, 598 A.2d 41 (1991), *appeal denied,* 534 Pa. 645, 627 A.2d 177 (1993).

Having reviewed the instructions as a whole, we find that the trial court adequately explained the law and properly charged the jury. *Butler, supra; Bailey, supra.* Thus, the trial court committed no error of law or abuse of discretion when giving its charge.

Finally, the Birdseyes allege that their sentences were improper and should have fallen within the mitigated

range of available sentences. Since this contention concerns the discretionary aspects of sentencing, the requirements of Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987), apply. The appellants, however, have failed to comply with Pa.R.A.P. 2119(f) which requires that a "concise statement of reasons relied upon for allowance of appeal" with respect to the discretionary aspects of the sentence be set forth in appellants' brief immediately preceding the argument section. Only if it is determined that a substantial question has been presented as to the appropriateness of the sentence under the Sentencing Code, 42 Pa.C.S. § 9781(b), may this Court review the manner in which the sentencing court exercised its discretion. *Tuladziecki, supra.* Because the appellants have neglected to include a 2119(f) statement and the Commonwealth, aware of the omission, made proper objection in its brief, we are precluded from addressing the merits of appellants' challenge. *Commonwealth v. Miller,* 414 Pa.Super. 56, 606 A.2d 495 (1992), *appeal denied,* 531 Pa. 639, 611 A.2d 711 (1992), citing *Tuladziecki, supra; Commonwealth v. Krum,* 367 Pa.Super. 511, 533 A.2d 134 (1987).

Based on the foregoing reasons, the judgments of sentence for the Birdseyes are affirmed.

Judgments of Sentence **AFFIRMED.**