J-S35041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RASSON DRAYTON, | : | |
| | : | |
| Appellant | : | No. 2214 EDA 2015 |

Appeal from the Judgment of Sentence August 4, 2011
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0008430-2010

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E. and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED JUNE 08, 2016**

Rasson Drayton ("Drayton"), appeals from the judgment of sentence imposed after a jury found him guilty of possession with intent to deliver a controlled substance ("PWID"), possession of an instrument of crime ("PIC"), and criminal conspiracy.[1]  We affirm in part, and vacate and remand in part.

The trial court set forth the relevant factual and procedural history in its Opinion, which we incorporate herein by reference.  **See** Trial Court Opinion, 11/18/15, at 1-4.[2]

On appeal, Drayton presents the following issues for our review:

---

[1] **See** 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. §§ 907(a), 903(a).

[2] As an addendum, we observe that, concerning Drayton's PWID conviction, the sentencing court imposed a mandatory minimum sentence of five to ten years, pursuant to 42 Pa.C.S.A. § 9712.1 (sentences for certain drug offenses committed with firearms), based on the close proximity of the drugs found in the front bedroom to the firearms.  **See** N.T., 8/4/11, at 5-6, 14.

1. Did the trial court err in denying [Drayton's] post-sentence [M]otion because [Drayton's] conviction is against the weight of the evidence in that [Drayton] was with another individual[,] who had a firearm[,] and [Drayton] then entered a house containing narcotics and firearms[,] and that other individual closed the door to th[e] house so that police could not enter?

2. Is [Drayton's] mandatory sentence unconstitutional and should the matter be remanded for resentencing?

Brief for Appellant at 4.

Drayton first argues that his convictions are "against the weight of the evidence because [he] was never seen with any firearms, was not seen selling any narcotics, and multiple people had access to the house wherein [Drayton] was arrested." *Id.* at 8. Drayton's purported weight of the evidence claim challenges the jury's finding that he constructively possessed the contraband police discovered inside 946 N. Farson Street (hereinafter "the Property"). *See id.* at 11 (asserting that "[t]here is no evidence to suggest that [Drayton] was in constructive possession of any of the contraband that was recovered[,]" and he "had only a tangential connection to the house that was raided[,] wherein there were others with actual possession of firearms ….").

Drayton's claim challenges the sufficiency, not the weight, of the evidence. *See*, *e.g.*, *Commonwealth v. Vargas*, 108 A.3d 858, 867-68 (Pa. Super. 2014) (*en banc*) (stating that a challenge to constructive possession of contraband implicates the sufficiency of the evidence); *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (same).

It is axiomatic that sufficiency and weight of the evidence are separate and distinct claims, as an argument that the jury's verdict was against the weight of the evidence concedes that the evidence was sufficient to sustain the convictions. ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013); ***see also Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (discussing the distinctions between challenges to the weight and sufficiency of the evidence); ***Commonwealth v. Charlton***, 902 A.2d 554, 561 (Pa. Super. 2006) (explaining that a challenge to the weight of the evidence questions which evidence is to be believed).[3] Despite Drayton's confusion, and his failure to raise a sufficiency challenge, by name, in his court-ordered Pa.R.A.P. 1925(b) Concise Statement, we decline to find waiver and will address his claim as a sufficiency challenge.

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. … Finally, the

---

[3] We observe that failure to recognize the distinction between the two separate claims may result in waiver. ***See***, ***e.g.***, ***Commonwealth v. Sullivan***, 864 A.2d 1246, 1248-49 (Pa. Super. 2004); ***Commonwealth v. Birdseye***, 637 A.2d 1036, 1039-40 (Pa. Super. 1994).

- 3 -

finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

Constructive possession is "a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986). Constructive possession entails the power to control the contraband and the intent to exercise that control. *Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983). "To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the defendant." *Vargas*, 108 A.3d at 868. Constructive possession may be inferred from the totality of the circumstances using circumstantial evidence. *Macolino*, 469 A.2d at 134.

Here, the trial court set forth in its Opinion the relevant law concerning the offenses of which Drayton was convicted, and determined that the jury's verdict and finding of constructive possession was supported by overwhelming evidence. *See* Trial Court Opinion, 11/18/15, at 5-7. We incorporate the trial court's analysis herein, as it is supported by the record

and the law. **See id.**[4] We conclude that the evidence set forth in the trial court's Opinion, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient for the jury to find constructive possession; therefore, Drayton's first issue fails. **See id.**; **see also Vargas**, 108 A.3d at 869 (stating that "although 'mere presence' at a crime scene cannot alone sustain a conviction for possession of contraband[,] 'a jury need not ignore presence, proximity and association when presented in conjunction with other evidence of guilt.'") (citation omitted); **Commonwealth v. Markovitch**, 565 A.2d 468, 471 (Pa. Super. 1989) (holding that the totality of the circumstances established the defendant's constructive possession of cocaine and paraphernalia that police seized from a glass table in the basement of a house the defendant occupied where (1) an officer observed the defendant coming up the stairs to the basement; (2) the presence of the defendant's jacket at the glass table and other evidence tied her to the drug packaging operation; and (3) the police stopped the defendant as she was attempting to flee the house); **Commonwealth v. Keefer**, 487 A.2d 915, 918 (Pa. Super. 1985) (holding that that Western Union receipts bearing the defendant's name found in a bedroom were sufficient indicia of ownership to support an inference of constructive possession of drugs also found within the bedroom).

---

[4] We overlook any reference by the trial court concerning the weight of the evidence, in light of our above discussion.

Next, Drayton argues that the mandatory sentence imposed on him under 42 Pa.C.S.A. § 9712.1[5] is illegal pursuant to **Alleyne v. United States**, 133 S. Ct. 2151 (2013), and its progeny. Brief for Appellant at 12-13; **see also Alleyne**, 133 S. Ct. at 2163 (holding that "facts that increase mandatory minimum sentences must be submitted to the jury" and must be found beyond a reasonable doubt. We agree.

Drayton's claim implicates the legality of his sentence, and therefore, cannot be waived. **See Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*) (stating that "a challenge to a sentence premised upon **Alleyne** [] implicates the legality of the sentence and cannot be waived on appeal.").[6]

---

[5] Relevantly, 42 Pa.C.S.A. § 9712.1 provides that "[p]rovisions of this section shall not be an element of the crime[,]" and that in order for the five-year mandatory minimum sentence under subsection 9712.1(a) to apply, the court must determine at sentencing, *by a preponderance of the evidence*, that the requirements were met. **Id.** § 9712.1(c).

[6] We note that the Pennsylvania Supreme Court, by accepting review of two of this Court's prior decisions, appears poised to address whether an **Alleyne** claim constitutes a non-waivable challenge to the legality of a sentence. **See Commonwealth v. Wolfe**, 106 A.3d 800 (Pa. Super. 2014), **appeal granted**, 121 A.3d 433 (Pa. 2015) (granting appeal to consider whether the Superior Court erred as a matter of law when it determined, *sua sponte*, that the defendant's mandatory minimum sentence was unconstitutional under **Alleyne** ); **Commonwealth v. Barnes**, 105 A.3d 47 (Pa. Super. 2014) (unpublished memorandum), **appeal granted**, 122 A.3d 1034 (Pa. 2015) (granting appeal to consider, *inter alia*, whether an **Alleyne** claim raises a challenge to the legality of sentencing). At this time, however, the holding of our *en banc* panel in **Newman** is binding precedent. Accordingly, we decline the Commonwealth's invitation in the instant case to withhold our ruling pending the Supreme Court's decisions on **Wolfe** and **Barnes**. **See** Brief for the Commonwealth at 9-10.

Drayton is correct that **Alleyne** rendered section 9712.1 constitutionally infirm in its entirety because the statute allows the sentencing court to determine, by only a preponderance of the evidence, whether the mandatory minimum applies. **See Newman**, 99 A.3d at 98; **see also Commonwealth v. Watley**, 81 A.3d 108, 112 n.2 (Pa. Super. 2013) (*en banc*); **Commonwealth v. Munday**, 78 A.3d 661, 666 (Pa. Super. 2013). Moreover, the trial court correctly recommended in its Opinion that Drayton's mandatory minimum sentence is illegal and that the case must be remanded for resentencing. **See** Trial Court Opinion, 11/18/15, at 8.

The mandatory minimum sentencing statute under which Drayton's sentences were imposed is unconstitutional in its entirety; accordingly, those sentences are illegal and must be vacated. Because our decision upsets the trial court's overall sentencing scheme, we vacate Drayton's judgment of sentence in its entirety, and remand for resentencing, without consideration of 42 Pa.C.S.A. § 9712.1. **See Commonwealth v. Ferguson**, 107 A.3d 206, 213-14, 216 (Pa. Super. 2015) (vacating entire sentence pursuant to **Alleyne** and remanding for resentencing on all counts, where the sentence encompassed both counts subject to mandatory minimum sentencing provisions and counts not subject to mandatory minimum sentencing provisions).

Drayton's convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2016

FILED

NOV 1 8 2015

Criminal Appeals Unit
First Judicial District of PA

**IN THE COURT OF COMMON PLEAS
COUNTY OF PHILADELPHIA
CRIMINAL TRIAL DIVISION**

FILED

NOV 1 8 2015

Criminal Appeals Unit
First Judicial District of PA

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania**<br>*Plaintiff* | : | |
| | : | |
| | : | **CP-51-CR-0008430-2010** |
| **v.** | : | |
| | : | **2214 EDA 2015** |
| **Rasson Drayton**<br>*Defendant* | : | |
| | : | |

CP-51-CR-0008430-2010 Comm. v. Drayton, Rasson
Opinion

7371682021

**OPINION**

**DJERASSI, J.**                                                        **November 13, 2015**

Following reinstatement of his direct appellate rights *nunc pro tunc*, Appellant Rasson

Drayton now claims jury verdicts against him are against the weight of the evidence. He also

claims that a mandatory minimum sentence on his PWID conviction is unconstitutional under

*Alleyne v. United States*, 133 S. Ct. 2151 (2013) as applied in *Commonwealth v. Newman*, 99

A.3d 86 (Pa. 2014), *appeal denied*, 121 A.3d 496 (Pa. 2015).

Because Drayton's convictions are supported by overwhelming direct and circumstantial

evidence, there is nothing shocking about the jury's guilty verdicts on PWID, criminal

conspiracy and PIC. However, upon careful review of Drayton's constitutionality argument

against his mandatory sentence under 42 Pa.C.S. § 9712.1, we agree with Appellant and request

remand for resentencing on the PWID charge only, pursuant to the *en banc* decision in

*Newman*.

## I.      STATEMENT OF FACTS

On April 29, 2010, at approximately 10:15 p.m., Philadelphia Police Officers Alice,

Tinneny, Ruth, and Dunne were on bike patrol in West Philadelphia in uniform, wearing blue

and yellow reflective police jackets. Officers Tinneny and Alice were roughly ten feet in front of

1

Ruth and Dunne as the four pedaled east on Wyalusing Avenue toward Farson Street. As they neared the intersection and prepared to turn right onto the 900 block of Farson, Officer Alice looked across a vacant corner lot and saw a cream colored Dodge Charger parked on Farson facing north toward Wyalusing.

Standing outside the car's open rear driver-side door were two men, later identified as Appellant Drayton and Co-defendant Omar Reeve. Both men were leaning forward inside the car, but they immediately straightened when they noticed the bike patrol officers. According to Officer Alice, Reeve pulled his arms out of the car, holding a silver handgun which he immediately tucked into his right-side waistband.

As the officers biked onto Farson Street, both Drayton and Reeve started walking quickly across the street toward a house at 946 N. Farson Street. Officer Alice saw the gun Reeve was carrying, and he alerted the other officers. Officer Alice shouted at Drayton and Reeve to stop. He was ignored; Reeve and Drayton continued toward the house and entered. As Officer Alice approached the property, Reeve slammed the front door, locked it, and turned off all the lights. Standing on the building's front porch, Officers Alice and Tinneny heard footsteps going up and down an interior staircase. Officer Alice knocked on the door without results and then tried to gain entry by shattering a glass security door at the front. He was unsuccessful because the door was fortified by solid metal bars.

While Officers Alice and Tinneny were trying to get in through the front, Officers Ruth and Dunne went around to the back where Officer Ruth saw Co-defendant John Brown coming out of a back door carrying a revolver in his hand. Officer Ruth shined his flashlight on Brown and ordered him to stop, but Brown stuck the gun in his waistband and returned inside the house.

2

Meanwhile, Officers Alice and Tinneny finally gained entry into 946 N. Farson through the front by breaking open a ground floor window. Knowing Reeve had been armed and that there were other people inside the house (including potential innocents), and hearing Officer Ruth shouting at a suspect from the back, Officers Alice and Tinneny decided to enter the property by force. They accomplished this by throwing their bicycles through a front glass window. Using flashlights, they then looked into an unlit front room and spotted Co-defendant Brown coming through a kitchen toward the front of the house. Officers Alice and Tinneny ordered Brown at gunpoint to open the front door and he complied. Entering the house, the officers placed Brown under arrest.

With all four policemen now inside the first floor, officers went upstairs to search for persons in the house. Reeve was immediately seen coming out of an upstairs bathroom and was arrested. He did not have a firearm on his person, but within seconds, a silver handgun was found inside a partially open toilet tank in the same bathroom. Co-defendants Darren Brown, Shelly Billups, and Carlton Roberts were also arrested inside 946 N. Farson as was Defendant Rasson Drayton.

Drayton was found hiding in the front bedroom of the house surrounded by narcotics, cash, and firearms. Executing an approved search warrant within an hour of arrest, police found marijuana, Xanax pills, cocaine, two handguns, and $2,035.00 in the room where Drayton had been hiding. Police also found mail sent to Drayton at a different address. Drayton's mail was on a table in the living room. Two more firearms were discovered in other rooms of this busted drug house.

3

## II.    PROCEDURAL HISTORY

Following a long multi-defendant jury trial, Defendant was found guilty of possession with intent to deliver controlled substances ("PWID"), criminal conspiracy, and possession of an instrument of crime ("PIC") on February 28, 2011. On August 4, 2011, Defendant was sentenced to the mandatory minimum of 5 to 10 years state incarceration on the PWID charge and to a concurrent term of 5 to 10 years for criminal conspiracy. He also received a concurrent term of 2½ to 5 years for possession of an instrument of crime (firearm).

Defendant filed a timely PCRA petition, was appointed counsel, and argued that trial counsel was ineffective for failing to file post-sentence motions and a direct appeal. Following an evidentiary hearing on May 7, 2015, Drayton was granted the right to file a post-sentence motion and direct appeal *nunc pro tunc*.

New counsel filed Drayton's post-trial motion on May 9, 2015. Two issues were raised: 1) the verdicts were against the weight of the evidence and 2) the mandatory PWID sentence was unconstitutional under *Alleyne v. United States*, 133 S. Ct. 2151 (2013). Post-sentence motions were denied on August 4, 2015. This timely appeal follows.

## III.    ISSUES ON APPEAL

On appeal, Defendant raises the same issues: (1) all Defendant's judgments of sentence should be vacated because the verdicts are against the weight of the evidence, and (2) Defendant's 5-10 year mandatory minimum sentence for the PWID charge is unconstitutional.

### A. The Verdicts Are Supported By The Evidence.

First, Defendant claims that his convictions were against the weight of the evidence, because he was not holding any of the firearms or selling narcotics himself and because other people had access to the house where he was arrested.

To sustain a claim that a verdict is against the weight of the evidence, a defendant must show that the verdict was so contrary to the evidence that it shocks one's sense of justice. ***Com. v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015), *reargument denied* (Mar. 24, 2015). The question ultimately is whether denial of post-sentence motions on grounds of weight of evidence is an abuse of discretion.

1. Possession with Intent to Deliver

To convict on possession with intent to deliver controlled substances, the Commonwealth must prove actual or constructive possession. ***Com. v. Little***, 879 A.2d 293, 297 (Pa. Super. 2005), *appeal denied*, 890 A.2d 1057 (Pa. 2005). A jury may infer either type of possession based on circumstances from which possession may be constructively inferred. The test is whether a person has the power and ability to exercise control over the illegal substance. ***Com. v. Valette***, 613 A.2d 548, 550 (Pa. 1992).

Drayton does not dispute that the large supply of narcotics and related paraphernalia recovered from the house is probative of a drug-dealing operation. He argues instead the Commonwealth failed to prove that he himself was in actual or constructive possession of narcotics and firearms.

Drayton appears to believe that he was convicted on the basis of mere presence, but the circumstantial evidence against him was actually overwhelming. Officer Alice testified that seconds after seeing Drayton accompany an armed Reeve into the house together, he heard the front door lock, and saw the lights inside the house go dark. Minutes later, after an exigent circumstance entry, there was Drayton in the front bedroom surrounded by pounds of narcotics and paraphernalia, two firearms, and over $2,000 in cash. Critically, two pieces of mail

addressed to Drayton were found inside the building's living room, establishing Drayton's presence there was not random and fleeting.

The jury found beyond a reasonable doubt that Drayton had constructive possession of this contraband since he clearly had the power and ability to control all or part of what was a huge drug stash.

## 2. Criminal Conspiracy

To convict a defendant of conspiracy, the Commonwealth must prove (1) an intent to commit or aid the commission of an unlawful act, (2) an agreement with a co-conspirator, and (3) an overt act in furtherance of the conspiracy. *Com. v. Galindes*, 786 A.2d 1004, 1010 (Pa. Super. 2001), *appeal denied*, 803 A.2d 733 (Pa. 2002). With respect to the overt act requirement, "[a]l co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action." *Com. v. Hannibal*, 753 A.2d 1265, 1274 (Pa. 2000). Additionally, the Commonwealth may prove an agreement by circumstantial evidence. *Galindes*, 786 A.2d at 1010.

Drayton argues that there was a lack of direct evidence proving his intent to deal narcotics, but the overwhelming circumstantial evidence discussed *supra* was very persuasive. The home was loaded with drugs and distribution paraphernalia. There were guns, ammunition, and more than $2000 in cash. Drayton and Reeve each had their mail in the house. Evidence was introduced that the gun recovered in the upstairs toilet tank moments after Reeve was seen leaving the bathroom belonged to Co-defendant Brown's wife. So did the car outside the house. A photo of Brown was in the kitchen. With these links and more in evidence, the jury's conspiracy verdict is no shock at all.

6

3. Possession of an Instrument of Crime

To convict a defendant of possession of an instrument of crime, the Commonwealth must establish that the defendant "possesses any instrument of crime with intent to employ it criminally." *Com. v. Stokes*, 38 A.3d 846, 854 (Pa. Super. 2011). It is undisputed that a gun can be an instrument of a crime, so the Commonwealth's burden was to show that Drayton constructively possessed the gun and intended to employ it criminally. *Id.*

Again, Drayton was found in the front bedroom with two handguns in easy reach. Evidence showed Drayton was the only person in the front bedroom only seconds after he had entered the house with an armed Reeve, and together they locked the door, turned off the houselights and ignored police knocks for entry.

These and nearly three weeks of other relevant evidence about the circumstance of the drug house occupants and their relationship to each other led to clear inferences that Drayton was part of a drug trafficking conspiracy with easy access and control to many firearms including those only a few feet away from him when he was arrested. See *Stokes*, 38 A.3d at 854 (affirming PIC conviction where defendant found in same room as drugs, drug paraphernalia, and firearm); see also *Com. v. Walker*, 874 A.2d 667, 678 (Pa. Super. 2005) (affirming constructive possession for PIC conviction where defendant present in same house as guns, drugs, and mail addressed to defendant when police arrived at home). Again, no shock that the jury convicted Drayton on the PIC charge.

**B. Remand Is Requested For Resentencing On The PWID Charge.**

Appellant claims his mandatory 5 to 10 year sentence for PWID is unconstitutional under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and he seeks remand for resentencing. On review of the *en banc* holding in *Commonwealth v. Newman*, 99 A.3d 86 (Pa. 2014), *appeal*

7

*denied*, 121 A.3d 496 (Pa. 2015), and the esteemed panel's Opinion which followed in *Commonwealth v. Valentine,* 101 A.2d 801 (Pa. Super. 2014), we request remand for resentencing on the PWID charge.

Drayton's PIC jury conviction was based on constructive possession, and we applied this directly when imposing the mandatory sentence. We conclude *Newman* and *Valentine* bar the application of 42 Pa.C.S. § 9712.1 to Drayton. As the *Newman* Court put it referring to constructive possession analysis, "Again, we find if learned jurists can arrive at the meaning of possession or control of a firearm as it is used in Section 9712.1(a) only after extensive analysis, there is no guarantee that a lay jury will undoubtedly arrive at the same conclusion." *Id.* at 100.

Since harmless error would not comply with *Alleyne* according to *Newman* and *Valentine*, we request remand for resentencing on the PWID charge.

IV.    CONCLUSION

All judgments of sentence should respectfully be affirmed, with the exception of judgment of sentence on the PWID charge, which should be vacated and remanded for resentencing without the mandatory minimum.


BY THE COURT:

_____
Ramy I. Djerassi, J.

8