J-S74014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABIJAH HINES | : | |
| | : | |
| Appellant | : | No. 2437 EDA 2016 |

Appeal from the Judgment of Sentence July 19, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004698-2015

BEFORE:  BOWES, J., LAZARUS, J., and RANSOM, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 27, 2018**

Abijah Hines appeals from the judgment of sentence of nine to twenty-three months incarceration followed by five years probation imposed following his convictions for possession with intent to deliver, possession of controlled substances, receipt of stolen property, and possession of an instrument of crime.  We affirm.

The trial court set forth the facts in its Pa.R.A.P. 1925(a) Opinion, which we adopt herein.

> Detective Theodore Manko testified that on March 14, 2015 at approximately 7:45 AM, he executed a search and seizure warrant on the property located at 1637 South 59th Street. Upon entering the residence, Detective Manko found the Defendant in the kitchen area and another male by the front door.  Detective Manko testified that he was investigating a domestic incident at the residence and was looking for any and all weapons or instruments of crime as well as proof of ownership or occupancy.  Upon securing the two males, Detective Manko immediately recovered a knife and firearm

ammunition. He proceeded to the back of the residence and found court documents in the Defendant's name in a back bedroom. In the bathroom, he recovered a rifle behind a service panel, which he had observed to be slightly ajar. He detected an odor of marijuana, initially under the kitchen sink, but subsequently noticed it throughout the house. He believed there was marijuana being stored beneath the floorboards for that reason. In the closet of the shared dining room area, Detective Manko ripped up some floor boards and recovered a blue bag with four gallon-sized bags full of marijuana and a Smith & Wesson handgun. Detective Manko described the residence as a two-bedroom apartment with a kitchen, bathroom and dining area. The dining area is in the back of the house, abutting the Defendant's bedroom. The substance identified by Detective Manko as marijuana was later tested with positive results for marijuana. Additionally, the Detective discovered scales and sandwich bags. Everything recovered was placed on a corresponding property receipt. The firearm check on the Smith & Wesson handgun revealed that it had been reported stolen from Georgia. The check conducted on the rifle came back inconclusive.

Sergeant Robert Albertini of the Atlanta, Georgia Police Department testified that it was his .38 caliber Smith & Wesson handgun that had been stolen from his vehicle along with his wallet. The serial number from the gun registered to him matched the gun recovered in the Defendant's home. This .38 caliber handgun had a partially obliterated serial number on the left side of the frame under the cylinder, but the serial number printed elsewhere was legible.

Trial Court Opinion, 2/3/17, at 2-3.

Appellant was convicted following a bench trial and sentenced as indicated. He filed a timely notice of appeal and complied with the order to file a concise statement of errors complained of on appeal. The trial court authored an opinion in response, and the matter is ready for review. Appellant raises three claims:

> I. Were the verdicts so contrary to the weight of the evidence as to shock one's sense of justice and based on pure conjecture where the Commonwealth failed to prove [Appellant] possessed the drugs around in the basement of a two apartment building where each apartment had a[cc]ess to the basement.
>
> II. Were the verdicts so contrary to the weight of the evidence as to shock one's sense of justice and based on pure conjecture where the Commonwealth failed to prove [Appellant] possessed an instrument of a crime when a firearm was found in a basement of a two apartment building where each apartment had a[cc]ess to the basement.
>
> III. Were the verdicts so contrary to the weight of the evidence as to shock one's sense of justice and based on pure conjecture where the Commonwealth failed to prove that Appellant knew or should have known that firearm, recovered from the basement of the apartment building, was stolen.

Appellant's brief at vi.

The Commonwealth argues that Appellant has waived his claims for failing to distinguish between weight and sufficiency. We agree that Appellant has confused the two concepts. Indeed, Appellant errs at the outset as he maintains that "The scope of appellate review of an [o]rder granting or denying reversal of a Judgment of Sentence on the basis of the weight and sufficiency of the evidence is identical to the standard employed by the [t]rial [c]ourt[.]" Appellant's brief at v. However, that is not true with respect to weight of the evidence. *See Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) ("An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court."). Additionally, Appellant frames all his arguments in terms of weight of the evidence and uses language specific to

weight of the evidence claims.  For example, all three of his arguments refer to whether the verdicts "shock one's sense of justice," which is a concept that applies to a weight claim.  *See Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa.Super. 2015) ("In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.") (citation and quotation marks omitted).

In contrast, our review of the sufficiency of the evidence "does not include an assessment of the credibility of the testimony offered by the Commonwealth."  *Commonwealth v. Wilson*, 825 A.2d 710, 713–14 (Pa.Super. 2003) (citations omitted).  Our standard of review asks only "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa.Super. 2017) (quoting *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa.Super. 2014)).  When applying this test

> we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in

applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Id*.

We agree that Appellant fails to recognize the different concepts at issue, which can result in waiver. However, while Appellant confuses these concepts, his arguments and citations are properly directed at the sufficiency of the evidence. Hence, we decline to find waiver. *Compare Commonwealth v. Birdseye*, 637 A.2d 1036 (Pa.Super. 1994) (finding waiver where identical argument was made for weight and sufficiency challenges, and appellants "neither cite[d] to the record nor do they cite to any case law to support their allegation[.]").

Turning to the merits, we find that Appellant is not entitled to relief. Appellant's first claim concerns the possession with intent to deliver charge. The drugs and gun were not found on Appellant's person. Therefore, the Commonwealth was required to prove constructive possession in order to satisfy the element of possession. Constructive possession has been described as

a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be

- 5 -

established by the totality of the circumstances. ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa.Super. 2013) (citation omitted). As with any sufficiency of the evidence challenge, constructive possession may be proven by circumstantial evidence, and the "requisite knowledge and intent may be inferred from examination of the totality of the circumstances." ***Commonwealth v. Clark***, 746 A.2d 1128, 1136 (Pa.Super. 2000) (quoting ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa.Super. 1996)). "Moreover, we have held that circumstantial evidence is reviewed by the same standard as direct evidence—that is, that a decision by the trial court will be affirmed 'so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.'" ***Commonwealth v. Johnson***, 818 A.2d 514, 516 (Pa.Super. 2003) (citations omitted).

To undercut constructive possession, which is the only element of the crime that Appellant attacks on appeal, he relies upon the following limitation to its applicability: "[W]here more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband." ***Commonwealth v. Davis***, 480 A.2d 1035, 1045 (Pa.Super. 1984) (emphasis omitted). He argues that this principle applies herein because the evidence established that more than one person had equal access to the

areas where the items were recovered, and that Appellant was merely present at the residence.

A clear example of a case where the evidence established only equal access and presence alone is ***Commonwealth v. Valette***, 613 A.2d 548 (Pa. 1992). Valette was in the living room of an apartment when the police executed a search warrant, which yielded drugs from the second floor of the apartment secured in a briefcase concealed beneath floorboards. Nothing incriminating was found on Valette's person nor in the room where he was located at the time of the raid. Our Supreme Court determined that his possessory convictions must be reversed.

> At trial the Commonwealth attempted to portray appellant as a participant involved in a large drug distribution scheme. **However, the only link to the narcotics confiscated from the premises was his presence and apparent acquaintanceship with the co-defendants**. The record is clear that no contraband was found in the room in which the appellant was sitting at the time entry was made by law enforcement officers; and, although $1500.00 in cash was found hidden on a shelf in a closet located in the room, there was no evidence that appellant knew of its existence, or had access to it: nor is the possession of cash a crime. Moreover, no personal property of petitioner's was located in the apartment.
>
> . . . .
>
> In this case, the record demonstrates nothing more than that appellant was present in an apartment in which drugs were found. In order to find the drugs, the police were required to make a full search, and the most significant quantity of drugs was found in a room on a separate floor in a closed case located beneath floorboards.

***Id***. at 551 (footnote omitted, emphasis added).

Simultaneously, the fact of equal access does not preclude constructive possession, as "it is possible for two people to have joint constructive possession of an item of contraband." *Hopkins*, *supra* at 820-21. This principle was illustrated in *Commonwealth v. Mudrick*, 507 A.2d 1212 (Pa. 1986). Therein, Mudrick was at the home of Sandra Dietz when officers served a fugitive warrant on Dietz. Mudrick informed the police that he and Dietz were engaged and that he owned one of the dogs on site. Within the premises, officers recovered marijuana on a living room table as well as cocaine in the home's only bedroom. *Id*. at 1212-13. Our Supreme Court analyzed *Commonwealth v. Macolino*, 469 A.2d 132 (Pa. 1983), wherein drugs and a variety of legal items used in the drug trade were discovered in the common bedroom of the Macolinos, a married couple. "[*Macolino*] held that 'constructive possession can be found in one defendant when both the husband and wife have equal access to an area where the illegal substance or contraband is found.'" *Mudrick*, *supra* at 1214 (quoting *Macolino*, *supra* at 135). The *Mudrick* Court held that constructive possession was established:

> Though the facts here do not precisely mirror those in *Macolino,* they are similar and the issue again concerns constructive possession in an area of joint control. We hold today that even absent a marital relationship constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access. The marital relationship *per se* was not critical to the *Macolino* analysis; shared access to and control of the area where the contraband was found was critical.

Here there was evidence that appellee lived in the residence and shared the bedroom with Ms. Dietz. From this evidence, the factfinder could find joint control over and equal access to the area where the cocaine was found, the bedroom. Given the totality of the circumstances, *i.e.,* joint control and equal access and evidence that the cocaine was found in plain view, the jury could have found constructive possession.

*Id*. at 1214 (footnotes omitted).

Appellant argues that this case falls on the *Valette* side of the spectrum on the basis that the Commonwealth failed to connect him "to the specific room or areas where the drugs were kept." Appellant's brief at 4. Moreover, Appellant emphasizes that an unknown person could have had access to the basement where the drugs were recovered.[1] Thus, Appellant extends the concept of joint control and access to theoretical joint control and access by unspecified persons.

_____

[1] Detective Manko testified that the floor of the closet seemed flimsy, and when he "lifted that up the cellar steps were there and right on top was a blue bag." N.T., 4/7/16, at 16. Appellant points to his cross-examination, when Detective Manko stated that he did not actually go down the steps. Appellant asked, "[A]re there other steps from another portion of the building or from the exterior of the building to access the basement?" *Id*. at 31. Detective Manko stated, "Possibly," and stated that he did not actually check the exterior. *Id*. at 32.

Appellant claims that this testimony establishes that "[a]ny number of people" would have had access to the basement, and, in turn, the area underneath the floorboards. Appellant's brief at x. We disagree. As noted in our standard of review, the Commonwealth is not required to preclude every possibility of innocence. Furthermore, Appellant did not establish that an alternative entrance to the basement actually exists, only that Detective Manko did not check for one.

We disagree. There is ample evidence of Appellant's connection to the items beyond presence and access. Most significantly, court documents bearing Appellant's name, with a listed address of the residence in question, were discovered in one of the apartment's two bedrooms. Furthermore, the testimony established that the odor of marijuana after Detective Manko looked in the area underneath the kitchen sink was so obvious that the occupant could not be ignorant of its presence. The source of that odor was four gallon-sized bags of marijuana found underneath the floorboards of the apartment's closet area. Thus, this is not a case of mere equal access and presence, as in **Valette**, and we find that the evidence suffices to establish constructive possession.

Appellant's second argument is identical to the first, and concerns whether the Commonwealth established constructive possession of the firearm found alongside the marijuana. For all of the foregoing reasons, we find that the Commonwealth established constructive possession of the firearm, and we therefore reject this claim.

We now address Appellant's final argument, which is that the Commonwealth failed to establish the crime of receipt of stolen property, which pertained to the firearm. The statute reads:

> **(a) Offense defined.**--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

- 10 -

18 Pa.C.S. § 3925. The elements of the crime are:

> (1) intentionally acquiring possession, control or title, retaining, disposing, or lending on the security of movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) intent to deprive permanently.

*Commonwealth v. Nero*, 58 A.3d 802, 807 (Pa.Super. 2012) (quoting *Commonwealth v. Young*, 35 A.3d 54, 63 (Pa.Super. 2011)). Appellant challenges the second element, averring that "the evidence was insufficient to establish that the appellant knew or believed the fire[arm] to be stolen." Appellant's brief at 6. Appellant highlights that over four years passed between the theft of the firearm, no other stolen items were discovered, and he did not flee.

In *Commonwealth v. Robinson*, 128 A.3d 261 (Pa.Super. 2015) (*en banc*), we extensively analyzed the element of knowledge as it pertains to receipt of stolen property. Therein officers handling a domestic dispute learned that Robinson was carrying a firearm in his pocket. *Id*. at 263. Officers secured the firearm and discovered that the registered owner had last seen the weapon approximately three years prior. On the basis of those facts, he was convicted of receipt of stolen property. On appeal, Robinson argued that the Commonwealth "presented no evidence at trial to establish that he knew, or had reason to know, that the firearm in his possession was stolen." *Id*. at 264. We agreed, and vacated the conviction.

In reaching our conclusion, we discussed the viability of an inference that the recent theft of an item, paired with unexplained possession of the

- 11 -

item, constitutes evidence of "knowledge." We explained that our Supreme Court has held that a theft of a firearm seven weeks prior to the incident at issue was too attenuated from the possession to permit the inference, partly due to the fact that the seven week delay "provided ample time for any number of transfers in seemingly innocent circumstances[.]" *Id*. at 266 (quotation marks and citation omitted).

Appellant is therefore correct that his unexplained possession of a firearm stolen years before the incident[2] in question cannot serve to establish his guilty knowledge. However, as we further explained in *Robinson*, recency is simply one basis for an inference of guilty knowledge, not the only one:

> Evidence of the recency of the theft is not the only basis for an inference of guilty knowledge. *See Commonwealth v. Stevenson*, 242 Pa.Super. 31, 363 A.2d 1144, 1145 (1976) ("[C]riminal intent or guilty knowledge may be inferred where facts and evidence are such as to show that element of the crime."). Circumstantial evidence of guilty knowledge may include, inter alia, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime. *See, e.g., Commonwealth v. Marrero*, 914 A.2d 870, 873 (Pa.Super.2006) (listing factors); [*Commonwealth v. Foreman*, 797 A.2d 1005, 1009 (Pa.Super. 2002)] (the owner of a motorcycle repair shop in possession of motorcycles, engines, and other parts, where the serial numbers on several of

---

[2] The owner testified that the firearm was stolen in 2011.

- 12 -

the motorcycle engines had been visibly altered); *Commonwealth v. Grabowski*, 306 Pa.Super. 483, 452 A.2d 827, 830 (1982) (attempts to sell a stolen car); *Commonwealth v. Worrell*, 277 Pa.Super. 386, 419 A.2d 1199, 1201–02 (1980) (VIN numbers on frame of vehicle and engine mutilated); *Commonwealth v. Brabham*, 268 Pa.Super. 35, 407 A.2d 424, 426–27 (1979) (flight from law enforcement at the time of arrest); *Commonwealth v. Phillips*, 258 Pa.Super. 109, 392 A.2d 708, 710 (1978) (appellant in possession of repainted motorcycle in the same city where it had been stolen, with the serial number marred).

*Id*. at 268–69. Since, in *Robinson*, there was no evidence of knowledge other than possession, the conviction could not stand.

Herein, we find that the circumstantial evidence suffices to establish that Appellant knew that the item was stolen. Significantly, the firearm's serial number was scratched off, and "whether the property has alterations indicative of being stolen can be used to establish guilty knowledge." *Commonwealth v. Foreman*, 797 A.2d 1005, 1012 (Pa.Super. 2002) (citing *Commonwealth v. Williams*, 362 A.2d 244, 249 n.7 (Pa. 1976)). Additionally, the firearm was stored alongside a substantial amount of marijuana, and while our Supreme Court has rejected a "guns follow drugs" presumption permitting a patdown for weapons based on the presence of drugs, *Commonwealth v. Grahame*, 7 A.3d 810 (Pa. 2010), the trial court was not required to ignore the combination of the two items, especially when the firearm's serial number was altered. Certainly, drug dealers commonly employ firearms in their trade, and it is but a simple step further to acknowledge that drug dealers are unlikely to obtain the tools of their trade

from legitimate channels. Therefore, we find that the receipt of stolen property conviction is not premised upon mere possession.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/18